SAMUEL M. STOCKER *vs.* WILLIAM A. FOSTER & another.

Essex.   November 7, 1900. — May 22, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

The will of a married woman contained the following devise: "All my estate both real and personal, of which I may die seized and possessed, or to which I may be entitled at my decease, I give, devise and bequeath to my husband A. B., to have and hold the same to him for and during his natural life; with full power and authority to sell and dispose of any and every portion thereof, whenever in his judgment he may deem it conducive to his comfort." Then followed the provision "At the decease of my said husband, all the residue of my said estate, that shall not be sold or disposed of by my said husband during his lifetime, I give, devise and bequeath as follows:" The property was then left to two sisters of the testatrix during their joint lives and, on the death of the survivor, in fee to a person named. *Held*, that the husband took an estate for life with a power to sell and dispose of any part of it during his lifetime when he deemed such disposition conducive to his comfort, that the words "sell and dispose" meant a disposition by sale and not by gift, and that the "comfort" referred to was the personal if not wholly physical comfort of the husband himself and not such comfort as he might feel in giving the property to others, that the power was confined to sales for a valuable consideration to be made only when the husband in good faith deemed such consideration conducive to his comfort by supplying his present or prospective needs, and that a conveyance by him, purporting to be made in execution of the power, for a fictitious consideration to the mother of his second wife, her only child, in order that his children by his second wife might inherit the property, was not a valid execution of the power.

On the trial of a writ of entry, it appeared, that the tenant claimed under a deed purporting to be made by A. B., in execution of a power under a will, and that the will left the property in question to A. B. for life with a power of disposing

of it during his lifetime for certain purposes, and gave the remainder after intervening life estates to the demandant. *Held*, that the burden was upon the tenant to show a valid exercise of the power, because the remainder vested in the demandant upon the death of the testator and remained thus vested unless divested by a valid execution of the power.

The will of a married woman gave all her property to her husband for life, with a power of selling and disposing of it during his lifetime "whenever in his judgment he may deem it conducive to his comfort." Upon the issue whether a deed to the mother of the husband's second wife purporting to be made in execution of this power was given for a valuable consideration and whether the grantor in good faith deemed the proceeds conducive to his comfort, it was *held*, that evidence of the pecuniary condition and circumstances of the grantor at the time he gave the deed were material, and that it might be shown that he had retired from business and had a competency and was a man of means with a substantial property.

St. 1898, c. 535, provides, that "No declaration of a deceased person shall be excluded as evidence on the ground of its being hearsay if it appears to the satisfaction of the judge to have been made in good faith before the beginning of the suit and upon the personal knowledge of the declarant." *Held*, that under this statute a statement of a deceased grantor in disparagement of his grant, made in the absence of the grantee, may be admitted against the grantee, although it would not have been admissible if the grantor had been alive at the time of the trial. The statement in this case was material to show the intent with which the grantor executed the deed, and if alive he could have testified as to his intent.

St. 1898, c. 535, in regard to the admission as evidence of declarations of deceased persons formerly excluded as hearsay, is applicable to civil cases in which the cause of action accrued before its passage.

WRIT OF ENTRY brought by a devisee under the will of Mary Foster to recover a parcel of land in Beverly from the heirs at law of Martha P. Trow claiming under a deed from William A. Foster, husband of said Mary, purporting to be made in execution of a power given him by her will, dated March 27, 1899.

At the trial in the Superior Court, before *Pierce*, J., without a jury, the following facts appeared:

The demandant was the Samuel M. Stocker mentioned in the fourth article of the will of Mary Foster. The tenants were in possession of the demanded premises claiming title by inheritance from Martha P. Trow.

The will of Mary Foster was dated December, 1869, and omitting the introductory paragraph and the attesting clause, was as follows:

"First. I constitute and appoint my said husband, William A. Foster, sole executor of this my last will.

"Second. All my estate both real and personal, of which I

may die seized and possessed, or to which I may be entitled at my decease, I give, devise and bequeath to my husband William A. Foster, to have and hold the same to him for and during his natural life; with full power and authority to sell and dispose of any and every portion thereof, whenever in his judgment he may deem it conducive to his comfort.

" Third. At the decease of my said husband, all the residue of my said estate, that shall not be sold or disposed of by my said husband during his lifetime, I give, devise and bequeath as follows: To my sisters Susan Fiske and Martha Raymond, all my silver spoons. To my nieces Hattie and Nancy Stocker, my watch, rings, jewelry and silver tea service, to be divided equally between them, and to my said sisters Susan Fiske and Martha Raymond, and to the survivor of them I give, devise and bequeath, the use, improvement and income of all of said residue of my estate, that shall be remaining at the decease of my said husband and which I have not hereinbefore in this clause of my will specifically disposed of, to have and to enjoy the same during their natural lives and the life of the survivor of them.

" Fourth. After the decease of my said sisters I give, devise and bequeath all my estate, that shall not have been sold or disposed of by my said husband, during his life, and which shall be remaining at his decease (except so much thereof, as I have disposed of in the third clause of this will) to Samuel M. Stocker, son of John M. Stocker of Lynn, to have and hold the same to him and his heirs and assigns forever."

Mary Foster died February 7, 1871, and her will was duly admitted to probate in the county of Essex, on the seventh day of March, 1871. At the time of her decease, she owned the demanded premises, which she inherited from her father. She died without issue, and her husband, William A. Foster, and her sisters, Martha Raymond and Susan Fiske, mentioned in the will, survived her. Martha Raymond died September 7, 1879, and Susan Fiske died April 4, 1887.

William A. Foster married a second time on November 18, 1872, and died July 24, 1898. The tenants are the only children of William A. Foster by his second wife. The second wife was the daughter and only child of Martha P. Trow, and died April 29, 1897. The tenant, William A. Foster, was born

December 12, 1873, and the tenant, Arthur T. Foster, May 12, 1879. Martha P. Trow died, intestate, April 29, 1898.

The deed from William A. Foster to Martha P. Trow was dated January 1, 1876, and began as follows:

" Know all men by these presents That I, William A. Foster of Beverly, Essex County, Massachusetts, by authority of and under the will of my former wife, Mary Foster, as in my judgment it will now be conducive to my comfort to make this conveyance and to sell and dispose of the estate hereinafter described and in consideration of four thousand five hundred dollars to me paid by Martha P. Trow of said town of Beverly the receipt whereof is hereby acknowledged do hereby give, grant, bargain, sell and convey unto the said Martha P. Trow and her heirs and assigns forever, all that estate in said Beverly described in the deed of Susan Raymond and Martha Raymond to their sister, my said former wife, by deed. . . . hereby conveying and intending to convey all the lands described in said several deeds including all that my said former wife inherited as well as what was conveyed in the deed of her said sisters, my said former wife having devised all her estate to me with full power and authority to sell and dispose of any and every portion thereof whenever in my judgment I may deem it conducive to my comfort. I do now make this conveyance under that authority, it being my judgment that it will conduce to my comfort so to do, and on account of the money consideration aforesaid."

The remaining portion of the deed contained a conveyance of a lot owned by the grantor in his own right and continued in the ordinary form of a warranty deed.

The tenants introduced in evidence a promissory note of Martha P. Trow for $4,500 dated January 1, 1876, and payable to the order of William A. Foster. They also introduced in evidence an instrument in writing purporting to be a lease of the demanded premises signed by Martha P. Trow and reading as follows: " I hereby lease and let to William A. Foster of Beverly all the estate this day conveyed to me by him for the term of six years from this date, he yielding and paying therefor an annual rent of Three hundred and fifty dollars at the end of each and every year, he also paying the taxes on said property,

and to have the right of renewal of this lease on the same terms as above and for the same term of time after the first six years have elapsed. Witness my hand and seal hereunto this first day of January in the year eighteen hundred and seventy-six." 

William A. Foster, one of the tenants, testified that he was the son of the William A. Foster named in the will, and the grandson of Martha P. Trow; that he found the note for $4,500 among his father's effects; that the lease was either with his father's or his mother's effects where they kept them together in a certain drawer. On cross-examination he testified that he believed that he found the lease and note together in the same drawer; that there were other papers in the drawer with them; that the deed was not with them; that he and his brother together found the deed; that it happened some time ago; that he could not say just exactly where they found it; that the deed was found among his grandmother's effects; that his grandmother, his father, his mother, and his father's children, always formed one family, living together in the same house harmoniously; that they did not live on the farm which is in controversy in this case, which was carried on by a man named Taylor, and had been so carried on ever since he could remember; that his father retired from business with a competency and had not been in any business except carrying on this farm since he could remember.

George W. Taylor, a witness for the demandant, testified that he occupied the farm in controversy in this case, and lived there until the February after Foster died; that before 1876 he carried on the farm for Foster, and received some compensation from him for doing so; that he received the same compensation. after 1876; that before and after 1876, Foster gave directions in regard to the way and manner of carrying on the farm; that there was not any time when any person other than Foster gave him directions in regard to the farm.

Taylor was permitted by the judge in the exercise of his discretion under St. 1898, c. 535, to testify against the objection and subject to the exception of the tenants to a conversation which he had with Foster, several years before Foster's death.

This conversation took place in the barn on the farm, and was as follows: " *Q.* What did he say to you about it? *A.* Well,

he said, ' Now,' says he, ' Now, I have got my property fixed '
or ' my farm fixed so that my boys shall have it — my children
shall have it.'    Them is the words said to me — the remarks.
I laughed at him and told him I thought it was all right before,
and then he says —    *Pierce*, J. Did he say children or boys?
*A.* He said children."

" *Q.* You have stated that talk as nearly as you now recollect
and as fully as you now recollect it ?    *A.* Yes. — *Q.* Now, to
refresh your recollection, did he tell you at that time in any
form of words that he had deeded it to the old woman Trow
because the children would not get it otherwise ?    *A.* I think
he did."

To the ruling of the judge admitting this testimony, the ten-
ants excepted. ·

The judge ruled that it was competent for the demandant to
prove the pecuniary condition and circumstances of William A.
Foster on the date of the deed to Mrs. Trow ; and to this ruling
the tenants excepted.    Without waiving their exception to the
ruling admitting such proof the tenants admitted that William
A. Foster retired from business before the death of his first wife,
and that at the time of her death and ever since he had a com-
petency and was a man of means ; that at the time of his decease
he had personal estate of the value of $25,000 to $30,000 and
owned several parcels of real estate in Beverly.    The value of
this real estate did not appear in evidence.

Robert W. Osgood, a witness for the demandant, testified that
he was employed in the registry of deeds for the southern dis-
trict of the county of Essex ; that he had a book containing
entries showing the dates that deeds are left for record, and tes-
tified to the following entry : " August 16, 1888, docket num-
ber 18, time 2.35, a deed from William A. Foster to Martha P.
Trow, land in Beverly, deed delivered to William A. Foster."
This entry was admitted in evidence against the objection and
subject to the exception of the tenants.

At the request of the demandant the judge ruled as follows :
1. The burden is on the tenants to prove a valid execution of
the power.    2. On the evidence in this case it is competent for
the court to find that there was not a valid execution of the
power.    3. If William Foster conveyed the land in question for

the sole purpose of making a gift of it to Mrs. Trow in order to have it enure to the benefit of his second wife and their children, and without receiving or intending to receive any valuable consideration for it, then such conveyance was not a valid execution of the power. 4. The power in the will authorized Foster to sell or otherwise dispose of the property for a valuable consideration whenever in his judgment he deemed ·the proceeds of such sale or disposition conducive to his comfort. The word " dispose " in the clause " to sell and dispose " falls within the rule *noscitur a sociis*, and the power is not executed by a gift made in the form of a sale. 5. If the deed was given without receiving or intending to receive a valuable consideration for it, it was not an execution of the power. 6. If the only consideration for the deed was a note which William Foster did not intend to collect and which he took only for the purpose of giving to the transaction, which he intended to be a gift, the form and appearance of a sale and conveyance for a valuable consideration, then such sale and conveyance was not an execution of the power. 7. The deed in question was not an execution of the power unless, in the judgment of Foster, giving the deed was conducive to his comfort by enabling him to supply his present or prospective needs by means of the consideration received for the deed. 8. If the word " comfort " refers to mental condition in the will, then the authority in question authorized Foster to sell or dispose of the property only for a valuable consideration and when he deemed such consideration would be conducive to his happiness and peace of mind by furnishing him with the means of supplying his present or future needs. To each of these rulings the tenants excepted.·

The judge refused to give certain rulings requested by the demandant which the finding of the judge has made immaterial.

The tenants asked the judge to rule that the power given by the will was, in effect, an absolute and unlimited power to sell and dispose of the property in question at the discretion of the devisee of the power, and whenever he deemed it conducive to his comfort so to do ; that it was not competent for the court to pass upon the question whether the exercise of the power by the devisee was founded upon a reasonable judgment, or was exercised with due regard to the rights or interests of the demand-

ant; and that upon the evidence the action could not be maintained. The judge refused so to rule, and the tenants excepted.

The judge found that the transaction between William A. Foster and Martha P. Trow was a colorable transaction made without consideration, and carried out for the purpose of transferring the property in question so that it might descend to his children regardless of the will, and found for the demandant. The tenants asked the judge to rule that such a finding was not warranted by the evidence. The judge refused so to rule.

Upon the various matters stated above the tenants alleged exceptions.

The case was argued at the bar in November, 1900; and afterwards was submitted on briefs to all the justices.

*J. J. Flaherty,* for the tenants.

*B. B. Jones,* (*H. F. Hurlburt* with him,) for the demandant.

HAMMOND, J. The devise in the second clause of the will of Mary Foster did not give to William A. Foster, her husband, an estate in fee, but an estate for life coupled with a power to " sell and dispose of " any part of the estate during his lifetime " whenever in his judgment he may deem it conducive to his comfort." *Kent* v. *Morrison,* 153 Mass. 137. *Collins* v. *Wickwire,* 162 Mass. 143.

We have first to deal with the question as to the nature of the power. It is contended by the demandant, on the one hand, that the power authorized Foster to sell, or otherwise dispose of, the estate only for a valuable consideration, and only when he deemed such sale or disposal to be conducive to his comfort by enabling him by means of such a consideration to supply his present or prospective needs. The tenants, on the other hand, contend that the power authorized Foster to sell and dispose of the property whenever such sale or disposition would have a tendency to promote his happiness or peace of mind, with or without regard to his present or prospective needs, and with or without a valuable consideration.

The testatrix left no issue, and, since the will, executed but a few months before her death, makes no mention of issue, we conclude that there were none at that time. While making her will, she had in her mind her husband, her sisters Susan and Martha, her nieces Hattie and Nancy, and the demandant, as

the persons among whom her property should be distributed.
She begins with the husband, giving him a life estate coupled
with a power to dispose of the real estate during his lifetime.
She then gives a life estate in the real estate, after the death of
the husband, to her two sisters, and the survivor of them, with
remainder in fee to the demandant. All these estates, including
that devised to the husband, may be abridged or defeated by
the execution of the power given to him to dispose of the land.
He is empowered to sell and dispose of the whole, or any part of
the real estate, " whenever in his judgment he may deem it con-
ducive to his comfort." The testatrix is speaking of property,·
and of property which she does not feel inclined to give in fee
to her husband. It is her wish that, unless the sale and dispo-
sition of it shall in his judgment conduce to his comfort, it shall
go to the other proposed objects of her bounty. She is speaking
of that kind of comfort which arises from the sale and disposi-
tion of real estate. She is not speaking of heirlooms, nor does it
appear that the real estate had any associations connected with
it which would make its sale or disposition anything more than
a mere matter of trade and the amount which could be obtained
for it. The idea of sale, and of the disposition consequent there-
upon, is the predominant idea in the mind of the testatrix. Under
these circumstances we can have no doubt that by the words
" sell and dispose of " is meant a disposition by sale and not by
gift, and that the " comfort" to which such a sale would " con-
duce " is the physical comfort to be derived from the actual or
potential application of the proceeds of such a disposition to the
present or prospective physical comfort or support of the hus-
band. There may be, also, to a limited extent, a mental element
in the comfort, consisting of that peace of mind which comes
from a knowledge or belief that, by reason of a change in the prop-
erty resulting from a disposition by sale, it will be rendered more
easily available for the physical comfort or suppprt of the hus-
band. See *Forman* v. *Whitney,* 2 Keyes, (N. Y.) 165.

But, all along, the language used by the testatrix seems clearly
to refer to such comfort as can be attained by the application of
the proceeds of the property to the reasonable needs of the life
of the donee of the power, and not to that peace of mind which
arises from a knowledge that the property has been so disposed

of as to contribute to the enjoyment and support of others. The comfort experienced by the philanthropist in giving away his property, whether to relatives, friends or strangers, does not seem to us to be the kind of comfort which the testatrix had in mind when she was engaged in making this will. The view for which the tenant contends seems to us a forced and unnatural construction of the language of the will, and inconsistent with the general nature of the business in which the testatrix was engaged while making it.

It follows that, in giving the third, fourth, fifth, seventh and eighth rulings requested by the demandant, and in refusing to rule, as requested by the tenants, that the power given in the will was in effect an absolute and unlimited power to sell and dispose at the discretion of the donee of the power, the court made no error in law.

The next question is whether the power was properly executed. The court found that the transaction between Foster and Mrs. Trow " was a colorable transaction made without consideration, and carried out for the purpose of transferring the property in question so that it might descend to his children regardless of the will," and found for the demandant. It is clear that, upon the construction we have given to the power, the transaction between Foster and Mrs. Trow was not a valid execution of the power if it was as found by the judge. The tenants insist however that the finding was not warranted by the evidence.

It would serve no useful purpose to recite the evidence in detail. We have examined it and have no hesitation in saying that it amply justifies the finding, and that the second and sixth requests of the demandant were properly given.

Although the power was to be exercised at the judgment of the husband, still he was bound to act in good faith. *Hoxie* v. *Finney*, 147 Mass. 616. *Lovett* v. *Farnham*, 169 Mass. 1.

The ruling, that the burden was upon the tenants to show a valid execution of the power, was correct. In such a case, at common law, " the demandant . . . may give evidence of the seisin on which he has counted, within the time alleged in his count. Having done this, he must recover, unless this evidence is controlled by the evidence of the tenant; or unless the tenant can show that the entry, which is averred to be a disseisin, was

just, or by judgment of law." Parsons, C. J., in *Wolcot* v. *Knight*, 6 Mass. 418, 419. In *Newhall* v. *Hopkins*, 6 Mass. 350, 356, where the demandant had counted upon the seisin of his grand-father, it was stated by the same justice that "it is certainly true, . . . that, if an actual seisin of the ancestor was proved within the time alleged in the writ, the tenant is put to show a rightful entry . . . or the verdict ought to be against him." It is also competent for the tenant, under the general issue, to disprove the seisin of the demandant, as alleged in his writ, by showing that the demandant's grantor had conveyed the title to another prior to his deed to the demandant. Stearns on Real Actions, (2d ed.) 198. *Wolcot* v. *Knight, ubi supra. Stanley* v. *Perley,* 5 Greenl. 369.

Under our statutes, the demandant is no longer required to prove an actual entry under his title, but, if he proves that he is entitled to such an estate as he claims in the premises, and also that he has a right of entry therein at the time the action is commenced, that is deemed sufficient proof of seisin, and he re-covers unless the tenant shows a better title in himself. Pub. Sts. c. 173, §§ 3, 4. *Austin* v. *Cambridgeport Parish,* 21 Pick. 215, 224. There was no question that the testatrix was seised in fee of the premises in dispute at the time of her decease. The demandant claimed as devisee under the will, the tenants under a deed from the donee claimed to have been given in the exer-cise of the power in the same will. By the will the land went to the husband for life, then to the two sisters of the testatrix during their lives and the life of the survivor, with remainder in fee to the demandant. All these estates vested in the respective devisees at the time of the death of the testatrix, even although they were liable to be defeated by the valid exercise of the power given to the husband to sell in fee simple. *Moore* v. *Weaver,* 16 Gray, 305. *Whipple* v. *Fairchild,* 139 Mass. 262. *Brewer* v. *Stevens,* 13 Allen, 346.

It is not a case where the vesting of the estate depends upon a condition precedent. The demandant, having shown the seisin of the testatrix at the time of her death, the probate of the will, and the death of the tenants for life, proved his title to the prem-ises, and was entitled to recover, unless the tenants proved a better title in themselves. *Newhall* v. *Hopkins,* 6 Mass. 350, 356.

Pub. Sts. c. 173, § 4. This they undertook to do by proving the execution of the power by the deed to Mrs. Trow. This deed had no tendency to show that the remainder devised to the demandant never was vested in him. It had no bearing whatever upon that question. It was material only on the issue whether he had been divested of his estate. If he had, then the better title was in the tenants, but, unless he had, the tenants failed to show a better title in themselves; and hence, under the rules applicable to the pleadings and proof in real actions, as shown by the authorities and statutes above cited upon this branch of the case, it seems plain that the burden was upon the tenants to show a valid execution of the power.

The ruling, that it was competent for the demandant to prove the pecuniary condition and circumstances of Foster on the date of the deed to Mrs. Trow, was correct. Such evidence was material, as bearing upon the motive and purpose for which the deed was given by Foster, and upon the question whether he was acting in good faith.

The exception to the admission of the entry in the book kept at the registry of deeds is not argued upon the brief of the tenants, and, considering its nature, we regard it as waived.

There remains the exception to the admission of the evidence of one Taylor, who testified that, some years after the making of the deed to Mrs. Trow, and before this suit was brought, Foster said to the witness that he had got his property fixed so that his children should have it, and that he had "deeded it to the old woman Trow because the children would not get it otherwise." This statement, made *in pais* by the grantor in disparagement of his grant in the absence of the grantee, would not be admissible if the grantor had been alive at the time of the trial. *Chase* v. *Horton,* 143 Mass. 118. The court however admitted the evidence under St. 1898, c. 535. This statute is short, and is as follows: "No declaration of a deceased person shall be excluded as evidence on the ground of its being hearsay if it appears to the satisfaction of the judge to have been made in good faith before the beginning of the suit and upon the personal knowledge of the declarant." It is to be assumed that it appeared to the satisfaction of the presiding justice that the conditions named in the statute existed. The question in dispute

was, whether the transaction between the declarant and Mrs. Trow was *bona fide,* or merely colorable ; and, on that question, the intent of the declarant, the grantor, at the time of the making of the deed was a material fact. If he had been alive at the time of the trial, it would have been competent for him to testify as to his intent. The case seems to come strictly within the statute. It is a declaration as to the existence of a material fact, namely, his intent in executing the deed, made by a deceased person in good faith before the beginning of the suit, and upon his personal knowledge. We think the admission of the evidence justified by the statute. If it be said, that this interpretation of the statute renders admissible declarations not theretofore admissible, we can only say that such is its manifest intent.

The statute is general in form, dealing only with a rule of evidence, and, so far as regards civil cases at least, it must be held, in accordance with the general rule in such matters, applicable to cases where the cause of action accrued before, as well as since, its passage. *Commonwealth* v. *Homer,* 153 Mass. 343. *Brooks* v. *Holden,* 175 Mass. 137.

<em>Exceptions overruled.</em>