CORNELIA T. METCALF, p. a. *vs.* JOHN RUSSELL GLADDING *et al.*

JUNE 30, 1913.

PRESENT: Johnson, C. J., Sweetland, and Vincent, JJ.

*(1)  Powers.  Wills.  Trusts.*

Testator after giving the income of his estate to his wife for life, upon her decease directed the division of "the trust estate *as it shall then be remaining,*" the will containing this provision: "I authorize my trustees if at any time it shall be deemed advisable by my wife to make an advancement to any one or all of my children out of the trust fund to make such advancement to them and charge the same against their interest in my estate, and to be hereafter deducted in any final division of the same among them or their representatives so that the shares of my children and the representatives. of such children standing in the place of their parents shall be equal as near as may be":—

*Held,* that as the court cannot find from the will that testator had any limitation of the power in mind and the will itself contains no words limiting the exercise of the power, the wife was invested with an absolute power to make advancements without reference to any special occasion or purpose, the only restriction being that no advancement should be made in excess of a child's distributive share.

*(2)   Wills.   Construction.   Intent.*

In the construction of a will to determine the nature and extent of a power,
    the intention of the testator in creating it and the purpose in view must be
    ascertained.   This intent must be gathered from the will as a whole, together
    with the circumstances surrounding him at the time it was made, so far as
    such circumstances appear of record.   While courts do not favor the exercise
    of an arbitrary power unless it is clear it was the intention of testator to
    confer it, yet such power may be created.

*(3)   Wills.   Powers.   Motive.*

Where one is invested with an absolute power to make advancements, in the
    absence of any fraud upon the power, there being no benefit to the donee of
    the power, the court cannot consider her motive in exercising it.

BILL for construction of will.

VINCENT, J.   This is a bill of complaint filed by Cornelia
T. Metcalf, an infant under the age of twenty-one years, by
her father and next friend, for the construction of the will of
the late Benjamin F. Thurston, grandfather of the complain-
ant, against John Russell Gladding, individually and as
·executor of Cornelia R. Thurston, Ellen DeF. Gladding,
Fanny R. Thurston, individually and as administratrix of
.John D. Thurston, Harriet E. Ingalls, Rathbone Gardner
and Brown University.

The case was certified to this court under Sec. 35, Chap.
289 of the General Laws and is now before us upon bill,
.answer, replication and testimony.

Benjamin F. Thurston deceaśed on the 13th day of March,
1890, leaving a will which was duly admitted to probate in
the municipal court of Providence on April 8, 1890.   The
·will was drafted by Mr. Thurston himself in Paris, France,
·during a brief visit to that city in July, 1889, and was exe-
·cuted there and witnessed by Mr. Lucian Sharpe and Mr.
Lucian Sharpe, Jr., both of Providence, Rhode Island.

In this will the testator, after certain specific legacies, gives
·the residue of his estate to his wife, Cornelia R. Thurston,
his son-in-law, John Russell Gladding, and his half brother,
John D. Thurston, in special trust for his wife, Cornelia R.
'Thurston, for life, which provision is stated to be in lieu of
·dower.   The will then continues, as follows:

"I give to my said trustees full power and authority, in their discretion, from time to time and as the necessities of the case shall require or as shall seem to them to be expedient to make any changes in the investment of the trust property in their hands and to make reinvestments thereof as often as occasion shall require and I further authorize my said trustees if at any time it shall be deemed advisable by my said wife to make an advancement to any one or all of my children out of the trust fund to make such advancement to them and charge the same against their interest respectively in my estate and to be hereafter deducted in any final division of the same among them or their representatives so that the shares of my said children and the representatives of such children standing in the place of their parents shall be equal as near as may be.

"Upon the decease of my said wife I direct the other trustees named and the survivor of them, their successors in the trust, their heirs, executors and administrators to divide the trust estate as it shall then be remaining into as many portions as near as may be of equal value as shall then be children of myself and of my said wife surviving and the children or other descendants of any of our children deceased; such children or descendants of any such deceased child standing in the place of and taking the share to which such deceased child would if living be entitled under this will."

Then follows various directions and provisions as to the disposition of the estate remaining after the death of Mrs. Thurston, which need not at this time be set forth or discussed. Mr. Thurston's decease, March 13, 1890, occurred eight months after the execution of the will. He was survived by his wife, Cornèlia R. Thurston, and his three children, Ellen DeF. Gladding, Harriet D. Thurston, and Benjamin Francis Thurston.

The daughter, Ellen DeF. Gladding, at the time of Mr. Thurston's decease, had been married about three years and was the only child then married. She has never had any children.

The other daughter, Harriet D. Thurston, in 1891, and subsequent to the death of the testator, married Jesse H. Metcalf, the father and next friend of the complainant, and died January 30, 1903, leaving the complainant her only child, who was born in 1892.

The son, Benjamin Francis Thurston, was married September 14, 1897, his wife died the year following, and he died August 21, 1906, without having had any children. The complainant, therefore, was the only child born to any of the testator's children.

The widow of the testator, Cornelia R. Thurston, survived her daughter Harriet and her son, Benjamin, and died November 29, 1909, leaving her said daughter Ellen DeF. Gladding and her granddaughter, Cornelia T. Metcalf, the complainant, her only descendants.

Upon the death of the testator, the trustees named in the will accepted the trust and acted as trustees down to February 23, 1909, when one of the trustees, John D. Thurston, died and was later succeeded by Rathbone Gardner. Since the death of Cornelia R. Thurston, November 29, 1909, John Russell Gladding and Rathbone Gardner have continued to act as trustees.

The original trustees collected the income of the estate and paid the net income thereof to the widow, Cornelia R. Thurston, and the same was applied by her to the uses and purposes of herself and children as she saw fit. After the death of the daughter Harriet, the amount received by Mrs. Gladding and Benjamin was increased and later, upon the death of Benjamin, Mrs. Gladding received a still larger amount.

The principal of the trust estate was retained by the trustees until March 30, 1898, but from that time until October, 1908, they, from time to time, paid from the principal of the trust estate to Benjamin Francis Thurston various sums, aggregating $75,500, and paid and transferred to Mrs. Gladding money and property amounting to some $354,806.58, more or less, according to the valuation which

should be properly placed upon some of the stocks involved in the transactions. The property transferred and the various sums of money paid over by the trustees, as aforesaid, from the principal of said trust fund were transferred and paid over by them upon the written request of the widow, Cornelia R. Thurston, embodying a notification to said trustees that she deemed such payments and transfers to be advisable as an advancement to said children out of her husband's estate, Mrs. Thurston claiming that she was invested, under her husband's will, with the power and authority to so dictate the action of the trustees whenever in her judgment such advancement should be deemed advisable.

The respondents contend that these transfers and payments, made under the circumstances and conditions aforesaid, were right and proper and that the clause of the will authorizing advancements to children gave authority to the trustees to transfer principal to children whenever the widow, Mrs. Thurston, might deem such advancements advisable. On the other hand, the complainant asserts that the discretionary power to make transfers of principal was not arbitrary and absolute, but was to be exercised only when there was a reasonable occasion for so doing; and that the transfers and payments to Mrs. Gladding were made without any reasonable occasion calling for the exercise of the power. The respondents, in their answer, admit that advancements have been made and they admit that they were not made on any particular call or occasion therefor.

The main question before this court is whether the power given to the widow, under the will, authorized her to make advancements when they were not called for by any particular occasion. With this clear understanding of the question before us, is seems unnecessary to include here any summary of the bill and answer. The language of the will (1) investing Mrs. Thurston with the power to make advancements is not accompanied by any words of limitation. It simply authorized the trustees to make advancements to the children whenever they were properly notified by Mrs.

Thurston that she considered such advancements advisable. So far as the language of the will goes, we cannot discover any intent on the part of the testator to make the exercise of the power dependent upon the presence of any unusual happening, circumstance, or condition. It seems to us that the testator had in mind the impartial treatment of his children in the final distribution of his estate, subject to any or such restrictions as his wife, in whom he seems to have had great confidence, might, in her good judgment, believe to be necessary. The will neither provides that advancements were to be made when they became necessary for the support of the children nor for their advancement or promotion in life. They were to be made when Mrs. Thurston should deem them advisable. In authorizing these advancements, the testator says in his will, "to make such advancement to them and charge the same against their interest respectively in my estate and to be hereafter deducted in any final division of the same among them or their representatives so that the shares of my said children and the representatives of such children standing in the place of their parents shall be equal as near as may be." This language suggests that the mind of the testator contemplated a possible distribution of his estate during the lifetime of his wife under the powers which had conferred upon her, in the exercise of which her only restriction should be equality.

Having given the income of his estate and the use and occupation of his houses in Providence and Nayatt to his wife for life, the testator then proceeds to direct the division of "the trust estate *as it shall then be remaining*," which indicates some expectation, on his part, that advancements might be made to the children reducing the principal of the estate.

(2) In construing the will of the testator, with a view to determining the nature and extent of the power intended to be given to Mrs. Thurston, we must ascertain, if possible, the intention of the testator in creating the power and the purpose which he had in view. It is the intent of the testator

which must determine the purpose and the extent to which the power may be exercised. The intent of the testator must be gathered from the will, viewed as a whole, together with the circumstances surrounding him at the time it was made and executed, so far as such attendant circumstances and conditions appear of record. It is true that courts do not favor the exercise of an arbitrary power unless it is clear that it was the intention of the testator to confer it, but it is equally true that it is competent for the testator to create an arbitrary power if he sees fit so to do.

Now, to state the question in another way: Was it the intention of Mr. Thurston that his widow should have absolute power to distribute to the children such portions of the principal of the trust estate as she might determine was advisable, without the permission or order of a court of equity? This leads us to the consideration of the term "advancement" as used by the testator in his will.

The complainant claims that the word "advancement," although not connected with anything else which might modify or restrict its ordinary meaning, can only be construed as authorizing a distribution of principal when such distribution may become necessary as, for instance, for the support and maintenance of the child, in starting the child in business, or enabling the child to do something which might be said to facilitate his advancement in life.

In many of the cases cited by the complainant on this point there is either something qualifying the term "advancement" or something else in the will tending to show that the testator used the word in a restricted sense. The definition of the word "advancement," taken by itself, is a prepayment to a child out of the testator's estate which is later to be deducted from said child's share when the final distribution takes place.

Mr. Thurston was a lawyer eminent in his profession and we cannot assume that he was unaware of the true meaning of the word "advancement" or that he was incapable of surrounding the exercise of the power with some restriction

or in some way indicating the particular sense in which he used the word, if other than in its well known and established meaning. Mr. Thurston in his will not only provided for advancements to his children, but he was also careful to provide for their deduction from the child's distributive share, at the same time directing an equal distribution between his children and their representatives.

Counsel upon both sides of the case have prepared and presented to the court very able and exhaustive briefs in which are cited a great number of cases in support of their several contentions. Authorities in such cases are useful so far as they may guide and assist the court in seeking out and finding the intention of the testator. The court must carry out the intent of the testator, if it can be determined, so long as such intent is not in violation of any established rule of law. The intent, as we have before said, must be derived from the will itself and the circumstances surrounding its preparation and execution. This is elementary and undisputed. If Mr. Thurston intended to so empower his wife that she might by her own unaided determination cause advancements to be made to his children out of the principal of his estate in derogation of the rights of remaindermen, such intent must be held to be controlling, as he had the right to make such a provision if he saw fit. The intent of the testator in this case cannot be changed or varied by former adjudicated cases where, although similar language was used, a different intent may have been shown by other provisions or the whole scheme of the will.

Many of the cases which the complainant cites and seems to rely upon in support of her contention that Mrs. Thurston had no authority to make advancements out of the principal, except upon some particular occasion, do not seem to us, upon careful examination, to bear out that view, but rather to deal with instruments containing some words of limitation. Take for example the case of *Stocker* v. *Foster*, 178 Mass. 591, where a married woman gave all her estate to her husband for life with full power and authority to sell and dispose of any

and every portion of the same whenever in his judgment he might deem it conducive to his comfort. The court there very properly held that the words "sell and dispose" meant a disposition by sale and not by gift, and that the "comfort" referred to was the personal and physical comfort of the husband himself and not such comfort as he might feel in giving the property to others. Also in the case of *Bailey* v. *Bailey,* 16 R. I. 251, where the will provided that if "at any time before the time for the final division of said trust estate as aforesaid shall arrive, my said husband or other the trustee or trustees hereunder for the time being, shall deem it advisable to convey or pay over to or for the use of either of my said children, for his or her advancement in life, the whole or any portion of his or her share aforesaid of said trust estate it shall be lawful for him or them so to do, charging the portions so conveyed or paid, with interest thereon  . . .  to such child to or for whom the same is so conveyed or paid, towards his or her share in the final distribution and division of said trust estate." The will provided that there should be a final division and distribution of the trust estate at the expiration of twenty-one years after the decease of the testator. The husband undertook to terminate the trust before the expiration of twenty-one years. He claimed that he had the power to do so under that clause of the will which gave him a discretion to convey or pay over to either of the *cestuis que trustent* "for his advancement in life" the whole or any part of his or her share in the trust estate. He claimed that the words "for his or her advancement in life" did not restrict his discretion, but were simply equivalent to "for his or her use and benefit." The court did not accept this view, but on the contrary, held that the words "for his or her advancement in life" were restrictive inasmuch as they seemed to point to some occasion out of the every day course, where the beneficiary has in mind some new act or undertaking which calls for pecuniary outlay and which, if properly conducted, holds out a prospect of something beyond a mere transient benefit or enjoyment.

The present case is quite different in that the will does not contain any words either in limitation of the power or even suggesting that the testator had any limitation thereof in mind.    On the contrary, the provisions of Mr. Thurston's will seem to clearly indicate that he intended to invest his wife with an absolute power to make advancements without reference to any special occasion or purpose.

The complainant claims that Mrs. Thurston exercised the power to make advancements from improper motives in that she was impelled to make the advancements to Mrs. Gladding through a feeling of animosity toward Mr. Metcalf engendered by her displeasure at his contemplated marriage and her belief that he had been instrumental in depriving her of the society of her grandchild, the complainant, especially on the occasion of her birthday, and that he intended to restrain and influence the complainant, to some extent at least, from visiting her.

(3) We do not think that in the absence of any fraud upon the power, there being no benefit arising to Mrs. Thurston from the advancements, that we can consider the question of motives after having reached the conclusion that Mrs. Thurston was fully empowered to make such advancements. 2 Sugden on Powers, *193; *Vane* v. *Lord Dungannon,* 2 Schoales LeFroy 117, 130; *Topham* v. *Duke of Portland,* L. R. 5 Ch. 40, 57.

The complainant, as the representative of her mother, Harriet D. Thurston, and Mrs. Gladding, are now the only surviving heirs of Mr. Thurston.    The complainant is already secure in the possession and enjoyment of one-half of his estate.    The advancements made to Mrs. Gladding do not fully cover the remaining half.    There is a substantial sum left to be administered and which is characterized in the will as "the trust estate as it shall then be remaining," evidently referring to that portion which shall be remaining after the deduction of such advancements as Mrs. Thurston might see fit to make.    This would seem to us to be consistent with the scheme of the will and in furtherance of one

of the primary objects of the testator which was the equal treatment of his children in their enjoyment of his estate.

It is also claimed that Mrs. Thurston, at the time of making the advancements to Mrs. Gladding, was enfeebled in health to an extent which would be likely to affect or weaken her judgment in business matters and that being in that condition she was influenced by Mr. Gladding, her son-in-law and co-trustee, who was particularly interested in having advancements made to his wife. This does not seem to be established. It is quite apparent that Mrs. Thurston was a woman who acted upon her own views and convictions. She evidently took the lead in the matter of the advancement to Mrs. Gladding. The participation of Mr. Gladding in that matter seems to have been confined to the rendering of such assistance to Mrs. Thurston, as she requested or demanded, in carrying out the arrangement, without any endeavor to initiate it or promote its accomplishment.

We are of the opinion that it was the intention of Mr. Thurston to invest his wife with full power and absolute authority to make advancements to his children during her lifetime as and when she might deem it advisable to do so, and that he did not intend that the right to make such advancements should be dependent upon the happening of any particular event, upon any particular occasion, or for any particular purpose, and that the only restriction upon her power was that she should not make advancements to one child in excess of such child's distributive share. Having reached this conclusion, there is no sufficient reason for discussing other questions raised by the respondents in their briefs.

The cause is remanded to the Superior Court for the entry of a decree dismissing the bill.

*Harry P. Cross, Greenough, Easton & Cross, Claude R. Branch, Robert B. Dresser, Eugene A. Kingman, Edwards & Angell,* for complainant.

*Green, Hinckley & Allen,* for respondents.

*John C. Gray, Theodore Francis Green, Frank L. Hinckley, Frederick W. Tillinghast,* of counsel.