# CHARLESTON.

YOUNG MAYNARD *et als.* v. S. SHEIN *et als.*

Submitted November 12, 1924.    Decided December 2, 1924.

1. APPEAL AND ERROR—PLEADING—*Plaintiff Must Prove Judicial Determination of Title As Alleged Unless Sufficiency of General Denial Answer Excepted to; Unsupported Allegation Not Considered on Appeal.*

   Where the bill alleges that the title to the land in litigation has been judicially determined by a court of competent jurisdiction having jurisdiction of the parties and subject matter; and the answer denies all the allegations of the bill not admitted to be true or not specifically denied and demands proof, the plaintiff is required to prove the allegation of judicial determination of title as alleged, unless he has excepted to

the sufficiency of the answer. In such case the appellate court will not consider the allegation of adjudication in the absence of evidence to sustain it.  (p. 602.)

(Appeal and Error, 3 C. J. § 623; Pleading, 31 Cyc. p. 679).

2.   POWERS—*Sale of Land by Life Tenant Under Express Power to Sister Valid Although Purchased With Previously Conceived Intention of Selling to Stranger.*

Where one is deeded a life estate in land, remainder to the heirs of his body, with power in the life tenant to sell the land to either of his brothers or sisters, a sale by him to one of his sisters for a valuable and adequate consideration is a valid exercise of the power, although she purchases with the purpose previously conceived of selling the land to a stranger; there being nothing in the instrument which created the power for her benefit to prevent her from alienating the land when purchased by her.  ( p. 603.)

(Powers, 31 Cyc. p. 1137 [1926 Anno.])

3   SAME—*Innocent Bona Fide Purchasers for Value of Land Sold by Life Tenant to Sister Under Express Power Protected Against Remaindermen Seeking to Set Aside for Fraud on Power.*

Where such power has been exercised by the donee and sale made to one of his sisters for a valuable and adequate consideration, and the evidence fails to show that the donee knew or had reason to know that she intended to sell to a stranger, but, on the contrary, does show that he made the sale in good faith upon his own initiative; subsequent innocent bona fide purchasers of the land for value will be protected against the remaindermen who seek to set aside the donee's deed on the ground of fraud upon the power.  (p. 607.)

(Powers, 31 Cyc. p. 1137 [1926 Anno.])

NOTE: Parenthetical references by Editors C. J.—Cyc. Not part of syllabi.

Appeal from Circuit Court, Mingo county.

Suit by Young Maynard and others against S. Shein and others. From a decree for plaintiffs, defendants appeal.

*Reversed; bill dismissed.*

*Goodykoontz, Scherr & Slaven,* for appellants.
*Hogg & .Hogg,* for appellees.

LIVELY, JUDGE:

This controversy is over the legal title to about 107 acres of land lying at the mouth of Lick Creek in Mingo County.

The deed under which the parties claim was executed by Richard Maynard and wife to M. V. B. Maynard, his son, in the year 1870, and the parts material to the controversy are: "the parties of the first part hath this day devised, bargained and sold and by these presents doth bargain and sell unto the party of the second part for and in consideration of the sum of twenty-five dollars to be paid to Parta Step wife of Aaron Step by the first day of June 1871 and in further consideration *of* that the party of the second part shall maintain and aid in maintaining the party of the first part together with his wife Charlotte *Maynor* during their natural *leives* and the party of the first part reserves to himself his House and House room for the use of himself and wife the Lands bounded are described as follows to-wit: (here follows description of land), to have and to hold the same during his natural life *there* to belong to the heirs of his *doby* but the parties of the first part grants to the party of the second part the *rite* to make sale to either of his Brothers or sisters the above named lands and the parties of the first part reserves the *venders* lien on said lands for the payment of the amount named above and for the support stipulated above the parties of the first part hereby relinquishes the *partys* of the second part all their right title and interest in the said lands to have and to hold the same forever upon the conditions above named and stipulated given under our hands and seals day and date above named."

M. V. B. Maynard, the grantee, took possession, and some time prior to 1890, conveyed the underlying mineral which is now claimed by Thacker Coal Company, not made a party to this suit. Subsequently he sold to Emmaline Runyon a part of the land lying between the railroad and Tug River, where she lived for about 16 years. This deed is not in the record. M. V. B. Maynard having failed to pay the $25.00 to Parta Step for which the vendor's lien was reserved in the deed, suit was instituted by Samuel Simpkins, assignee of Parta Step, to enforce the lien, which resulted in sale to Mary Taylor who took possession of all the land not held by Emmaline Runyon. No deed was made to her, but she joined with the Commissioner in a deed dated December 11, 1905, to

S. Shein (one of the principal defendants), in which they conveyed to him all their right, title and interest to the surface of the land in controversy, for $400.00, "being the surface of that certain tract or parcel of land conveyed by Richard Maynard in his lifetime to M. V. B. Maynard, and sold in the chancery cause of Samuel Simpkins against M. V. B. Maynard and others, aforesaid." On March 22, 1905, M. V. B. Maynard and wife deeded to Harriett E. Simpkins all their right, title and interest in the land, for the sum of $225.00. On the 28th of April, 1905, Harriett E. Simpkins and husband deeded all their right, title and interest to S. Shein, for $325.00. On December 11, 1905, Mary Taylor and John L. Stafford, Special Commissioner, made a deed to S. Shein for $400.00, as above set out. On November 12, 1907, Emmaline Runyon and husband deeded to S. Shein all their right, title and interest in that part of the land lying between the railroad and Tug River. Shein then divided the bottom land into town lots and sold fourteen or fifteen of them to various purchasers. In 1910 he deeded a railroad right of way over the land now held and operated by Sycamore Coal Company. In the same month he deeded the land to Goodykoontz, Trustee, for certain creditors; and later in 1915 he conveyed the land to Friedburg and Scheer, Trustees, for the benefit of all of his numerous creditors. These creditors have not been paid. M. V. B. Maynard died in 1912 in the asylum for the insane, survived by Young Maynard and three other children and his wife, Mary. His children are the plaintiffs in this suit, which was begun in 1916. Previous to this suit, they had instituted suit to set aside the deed from their father, M. V. B. Maynard, to Harriett E. Simpkins, his sister, which suit was removed to the federal court and there dismissed on the ground that they had a complete remedy at law. Then they instituted suit in ejectment in Mingo County Circuit Court against those holding the land upon the trial of which they took a nonsuit. This suit followed.

The bill and amended bills are for the purpose of cancelling the deed from M. V. B. Maynard to Harriett E. Simpkins, the deed from Mary Taylor to Shein, and to cancel and re-

move as clouds upon plaintiffs' title the various deeds made by Shein, and to quiet plaintiffs' title in fee simple to the lands as remaindermen under the deed from Richard Maynard to their father, made in 1870. The bill charges that the decree in the vendor's lien suit instituted by Samuel Simpkins, ascertained that M. V. B. Maynard had a life estate only in the land; and charged that in a condemnation suit instituted by the N. & W. Ry. Co. for a railroad right of way in their father's lifetime, it was judicially ascertained that he had a life estate only, with remainder to his children, the plaintiffs. The bill purports to exhibit the decree and order, but they are not in the record, and defendants say they were never filed as exhibits with the bill. The bill charges that Shein and Sam'l Simpkins, well knowing that M. V. B. Maynard had only a life estate, combined and conspired together to induce him to make the deed to Harriett Simpkins, hoping that such deed would comply with the power given to M. V. B. Maynard in the deed to him in 1870, to sell the land to one of his brothers or sisters; that by making him drunk and by undue influence they procured him to make the deed in order to deprive plaintiffs of their inheritance; that he was insane at the time and knew not what he was doing; all for the purpose of defrauding plaintiffs; that the deed of 1870 gave plaintiffs a vested remainder in fee after their father's death, and that the power given their father to sell was repugnant to the granting clause and is void.

The answers deny the material allegations of the bills. The answers of the trustees and beneficiaries, and the answers of those defendants who had received deeds immediately or mediately from Shein are that they are innocent purchasers for value with no notice of the alleged fraud committed by Shein and Simpkins in the procurement of the deed from M. V. B. Maynard in 1905 in the exercise of the power given him in the deed of 1870.

A large number of witnesses were examined in respect to the sanity of M. V. B. Maynard, and his intoxication at the time of the deed to his sister, Harriett Simpkins, and the part taken therein by Shein and Samuel Simpkins.

The decree set aside the deed to Harriett Simpkins; the deed from her to Shein; the deed from Mary Taylor and others to Shein; and the various deeds and deeds of trust executed by Shein, as clouds upon the plaintiffs' title to the surface of the land; and adjudicated plaintiffs' title to the surface as superior to all others, and awarded them a writ of possession. The court found the evidence insufficient to sustain the charge that M. V. B. Maynard was insane or intoxicated when he executed the Simpkins deed; but found that the evidence was sufficient to show fraud upon the part of Shein in procuring the deed to be made, in order that he could, and did a few days later, take the title to himself, and that he was the real purchaser.

The above statement of the documentary evidence, the issues and how raised and decided, is sufficient to set out the points on which the case turns. We have examined the mass of verbal evidence touching the question of Maynard's insanity and drunkardness when he and his wife executed the Simpkins deed, and the part played by Shein and Samuel Simpkins in that transaction, and approve the finding of the lower court that Maynard was neither insane nor drunk. It is shown by Samuel Simpkins that Maynard, about a month before the execution of the deed, came to his house and solicited his wife, (Maynard's sister, now dead), to purchase the land. She finally consented to do so and authorized her husband to make the purchase. This evidence is uncontradicted.

Appellants assert that the Richard Maynard deed of 1870 vested in M. V. B. Maynard, his son, a life estate in the land with power to convey to any of his brothers or sisters the fee, remainder over to his children subject to be defeated by the exercise of the power, citing *Englerth* v. *Kellar*, 50 W. Va. 259; *Morgan* v. *Morgan*, 60 W. Va. 327; *Lott* v. *Braham*, 92 W. Va. 317, and decisions from other jurisdictions of like import. Appellees do not controvert this proposition, but aver that a court of competent jurisdiction having in two instances, the vendor's lien suit and the condemnation suit, adjudicated that M. V. B. Maynard took a life estate only, this court cannot now construe that deed, and therefore

the Simpkins deed could convey no more than the life estate owned by Maynard as judicially determined. These adjudications are alleged in the bill, and the decree in the vendor's lien suit, as well as the order in the condemnation suit, are purported to be exhibited with the bill. We do not find them in the record. Appellants say they were never exhibited, and one ground of demurrer to the bill goes to their absence. Appellants' answers deny all the allegations of the bill not admitted or specifically denied, and there were no exceptions to the answers. The burden of proving this allegation of the bill was on plaintiffs and they have failed to carry it. *Burlew* v. *Quarrier,* 16 W. Va. 108; *Sandusky* v. *Farris,* 49 W. Va. 150. The allegation fails for want of proof. The deed from Mary Taylor and Special Commissioner Stafford to Shein, conveys all their right, title and interest to the surface. This is the only evidence that there was a vendor's lien suit; and it does not show adjudication of title. Suppose it was adjudicated that Maynard had a life estate only? That was what he actually had, but coupled with that estate he had the power of defeating the remaindermen by selling the land to one of his brothers or sisters, and it seems to us that the adjudications if made would not deprive him of afterwards exercising that power. The power was exclusively his; it could not be sold to the purchaser of his life estate for his debts; nor could the beneficiaries be deprived of the benefit made accessible to them by their ancestor because the donee became involved in debt. But the alleged adjudication not being proven, its effect on the power before us is not here determined.

Apparently recognizing that the exercise of the power by their father would convey the land and thus extinguish their remainder interests, appellees further assert that the purpose of the Simpkins deed was to convey the title to Shein and its execution was a perpetration of a fraud upon their rights; that it was a mere subterfuge to defeat the plain and expressed intention of the donor, participated in by Samuel Simpkins, Shein and M. V. B. Maynard; and therefore a fraud on the power. The lower court took this view, and cancelled the deed for this reason. To sustain the decree

we are cicted to Vol. 1 Reeves on Real Property, Sec. 402; 22 A. & E. Ency. Law 1152, 1153, 1154;*Degman* v. *Degman* (Ky.), 34 S. W. 523; Tiffany Real Property, Sec. 289; *Shank* v. *Dewitt* (Ohio), 6 N. E. 255; and *Stocker* v. *Foster* (Mass.), 60 N. E. 407. These text books and cases are to the effect that a fraud on a power is its improper execution, or other unfair dealing concerning it, so as to injure the beneficiaries of the appointment; that the donee of a power must exercise it in good faith for the end designed; that if he deals with it for his own benefit, or even for the benefit of a stranger so as to work an injustice toward the legitimate beneficiaries of the power, a constructive trust will fasten upon the property for their benefit. The donee must participate in the improper execution of the power, or in the fraud upon it. In *Degman* v. *Degman,* cited, the donee, the wife of the testator, had power of appointment after her life estate among their children. For a pecuniary benefit to herself she appointed to one of the children. She participated in the fraud on the other beneficiaries. A like fraud was perpetrated by the donee in *Shank* v. *Dewitt,* cited. In *Stocker* v. *Foster,* cited, the donee of the power conveyed the remainder of the estate to Mrs. Trow without consideration, in order that the property would descend to his children. He had power to sell for the purpose of his own comfort only. It was not a valid execution of the power. We fail to find that there is any intimation in the evidence that M. V. B. Maynard combined or conspired with Shein and Samuel Simpkins to exercise the power in favor of Shein. The bill does not charge Maynard with fraud in the execution of the power. It charges that Shein and Simpkins by the use of liquor and undue influence procured him to execute the power and sell to his sister, thereby hoping that his deed would comply with the requirement of the deed of 1870; that Maynard was old and feeble, insane, and drunk, and knew not what he was doing. As before stated, the lower court found that these charges were not sustained. Instead of participation in the scheme to exercise the power in favor of Shein we note from the evidence that probably a month before the deed was executed Maynard went to his sister's (Mrs.

Simpkins) home and began the negotiations for the sale to her afterwards consummated, and that in the opinion of many of the witnesses, some of them of the Maynard family, the consideration was adequate. Mere inadequacy of consideration is not sufficient to set aside a sale unless accompanied by fraud, or unless it be so inadequate as to denote fraud and shock the conscience. *Bradford* v. *McConihay*, 15 W. Va. 732. Maynard could not do indirectly that which it would be improper for him to do directly in carrying out the power. *Bradford* v. *McConihay*, 15 W. Va. 732. He could not sell to Shein indirectly and by so doing defeat the right of one of his brothers or sisters to buy. If he sold, the sale could be made only to a brother or sister. It will be observed that there are no restrictions upon disposition of the land after it passes into the hands of the beneficiary of the power. Whether Maynard having the power to convert the land into money by sale thereof had authority to use the money for his own benefit, or the authority only to use the income therefrom, is not involved in this suit. He had the broad power of sale of the land to a limited class of purchasers, the beneficiaries of the power. The power has no restrictions as to price or terms. There is authority that an appointment to a stranger to the power by the direction of the beneficiary is a valid exercise of the power, as in effect it is an appointment to and settlement by the beneficiary. *Goldsmid* v. *Goldsmid*, 2 Hare 187, 67 Eng. Rep. 78; *White* v. *St. Barbe*, 1 Ves. & B. 399, 35 Eng. Rep. page 155, (wherein under a power to appoint among children it was held that the appointment could be made to grandchildren, strangers to the power, with the concurrence of their mother, an object of the power, and her husband); *Fitzroy* v. *Duke of Richmond*, 27 Beav. 190, 54 Eng. Rep. page 74; *Re Gosset's Settlement*, 19 Beav. 529; 52 Eng. Rep. page 456. The case of *Glenn* v. *Glenn*, 21 S. C. 308, cited by appellants, is in point. The testator, David Glenn, willed land to his son William for life, remainder to his issue forever, with power to William to sell to any of testator's "issue." William conveyed the land to his son, A. J. Glenn, who by previous arrangement, two days later conveyed to his uncle, George W. Glenn,

for a consideration. The surviving children of William claimed the fee in land charging that the two deeds, one to A. J. Glenn and the other by him two days later to G. W. Glenn, were in truth only one, and was a corrupt combination to do by indirection what could not be done directly, and was a fraud on the power and therefore void. The court held it to be a proper exercise of the power even if the deed to A. J. Glenn was intended as one of the links in the chain° to carry the title to the uncle. The word "issue" in the will was construed to include grandchildren and therefore included A. J. Glenn. This principle was decisive in *McQueen* v. *Farquhar,* 11 Ves. Jun. 467. Sugden on Powers page 179 summarizes that case as follows: "This was decided in the late case of *McQueen* v. *Farquhar,* (s) where under an exclusive power of appointment, a father appointed to one son in fee, and then the father, and wife and the son, joined in conveying to a purchaser, and the money was expressed to be paid to them all. The title was objected to on the ground of an opinion, by which it appeared, that the father first sold the estate, and then the appointment was devised to make a title, and the purchase-deed recited that the contract was made with the father and son. It was insisted, that if the father derived any benefit from the agreement, or even made a previous stipulation that his son should join him in a sale, which there appeared the strongest reason to apprehend, it would have been a fraudulent execution. But Lord Eldon overruled the objection, as it did not appear that the estate sold for less than its value, or that the son got less than the value of his reversionary interest, but merely that he, as the owner of the reversion, acceded to the purchase." And in *Ingraham v. Meade,* 3 Wall. Jr. 32, 13 Fed. Cases page 50, Case No. 7,045, it was held in Syll. 5, "Although the donee of a power may not do indirectly that which it is unlawful for him to do directly, yet where the donee has exercised the power, without any agreement with the party in whose favor it in terms beneficially operates, that such party shall apply its benefits in the manner unlawful for the donee to direct, the simple fact that such party has voluntarily, and without any knowledge of what the donee intended to do, applied or agreed with a

third party so to apply them, is not enough to make the appointment a fraud and void.'' As before observed there is no evidence that M. V. B. Maynard knew that his sister would sell or intended to sell the title to Shein. Even if he had known it, under the cases above cited the deed would not be void as a fraud on the power. He had full power to sell to his sister, and there were no restrictions upon her right to sell to another. While Samuel Simpkins and Shein both deny that there was a secret understanding between them, or any understanding, that the land was to be purchased by the latter, thus in reality being a purchase through the sister for Shein, the lower court found from the evidence and circumstances that there was in fact such secret understanding and its existence and fruition constituted a fraud on the power and avoided the Simpkins deed and all subsequent deeds. This conclusion of law from that finding of fact is not sound. It is not charged in the bill that Maynard perpetrated a fraud on the power; nor is it shown in the evidence that he knew of any understanding by which Shein was to purchase the land, or that the purchase was being made for the benefit of the latter.

It will be noted that after Shein purchased from Harriett Simpkins on April 28, 1905, he afterward in December, 1905, purchased Mary Taylor's interest in the surface; and later in November, 1907, took a deed from Emmaline Runyon for her interest; and later he sold town lots carved out of the land to various persons; and still later in 1910 and 1915, conveyed all his remaining interest in the land to trustees for the benefit of his creditors. These subsequent purchasers aver that they are purchasers for value without notice of the alleged fraud attributed to Samuel Simpkins and Shein. This fact is unchallenged; and it is conceded that creditors under a deed of trust for their benefit are purchasers for value. But appellees' counsel contend that these purchasers can stand on no higher plane than Shein, their grantor, who could sell to them only a life estate; that he and they are bound by the adjudications in the vendor's lien suit and the condemnation proceedings, which declared that M. V. B. Maynard had a life estate only, and he having died in 1912, their titles and possessions were at an end. It is again

noted that the alleged adjudications of title in M. V. B. Maynard are not proven. These purchasers for value are not charged with notice of the fraud alleged to have been committed by Simpkins and Shein, nor does the evidence convict them of notice. The deed from Maynard to Simpkins, and from her to Shein are regular on their face and show no abuse or fraud on the power. The deeds had been on public record since 1905, without attack, and Shein was in possession. The record of the exercise of the power being regular on its face, and nothing to put them on notice shown in the testimony there is little equity on which to base a cancellation of their deeds.

It is not necessary to consider the other assignments of error in the decree, relating to lack of jurisdiction in the lower court to remove clouds from plaintiffs' title because they were not in possession; that the bill should be dismissed because no offer is made therein to repay the purchase price paid by Harriett Simpkins, and thus restore the status quo; that plaintiffs are barred by the judgments of non-suit entered by the Mingo Circuit Court in the ejectment suit, and barred by the order of dismissal of the chancery suit in the district court of the United States.

The decree will be reversed, and the bill dismissed.

*Reversed; bill dismissed.*