## Case No. 7,045.

### INGRAHAM v. MEADE.

[3 Wall. Jr. 32;[1] 13 Leg. Int. 372.]

Circuit Court, E. D. Pennsylvania. April Term, 1855.

[1] [Reported by John William Wallace, Esq., and here reprinted by permission.]

Mr. Meredith and Mr. McMurtrie, for complainant,

P. M. McCall, contra.

GRIER, Circuit Justice. I. Is this appointment of $500 illusory and therefore void? The theory on which the English chancellors have acted in setting aside certain appointments as "illusory," is apparently founded in equity and justice. But like many other theories which are very plausible in the abstract, experience has shown this one to be difficult in application. The term "illusory" is vague and indefinite, depending on uncertain discretion or opinion of the person using it. Where a power is given by the donor to another to distribute, it is for the purpose of inequality, which future and unknown events may make just and judicious. The donor might do with his own as he pleased—give a penny to one, and ten thousand pounds to another. He has a right to intrust this power to another by substitution. The objects of his bounty are now all equally worthy (infants perhaps); if the division were made now, there is no reason for inequality. But before the time arrives for distribution, there may be a thousand reasons why the distribution should be unequal. When a chancellor undertakes to decide that any degree of inequality is a fraudulent exercise of the power, he is assuming to himself a knowledge of the secret wish and intention of the donor not expressed in the deed, and undertaking to exercise a discretionary power not intrusted to him, but to another. It would perhaps have been better originally to have adopted the adage "stet pro ratione voluntas" in such cases, than to have assumed this indefinite, discretionary and therefore dangerous power over men's property. However much the chancellor may laud his great principle, that equality is equity, how does he know that even extreme inequality was not the very purpose and object of the power? I certainly concur with the scruples expressed on this subject in the English chancery cases of Kemp v. Kemp, 5 Ves. 849; Butcher v. Butcher, 9 Ves. 393; and Bax v. Whitebread, 16 Ves. 15.

We know of no cases showing whether this doctrine, so much disliked by later authorities and finally abolished by act of parliament in England, has ever been adopted by the courts of Pennsylvania. We are, therefore, pleased to be relieved from the responsibility of deciding the question whether the appointment of $500 to one of a class of nine or ten in the distribution of $50,000 be illusory or not.

The power in this case is not only to distribute among, but to select from, the class of persons pointed out. It is what is called an exclusive power. The right to select necessarily implies the power to exclude. No distributee can say his share is illusory, when the distributor was not bound to give him anything. We cannot strike out the words "such of," out of this deed; and unless we do so, the rules of grammar and all legal precedent must be disregarded, before we pronounce this not to be an exclusive power. The cases on the subject are too numerous to be specially noticed, but may be found collected in Mr. Sugden's work on Powers (chapter 7, § 5).

II. Are the appointments to the grandchildren void for defect of power? As the alternative appointments are made to "children" in case those to the grandchildren should fail for want of power, there can be no failure for defect of power or want of appointment. Whether the appointment to the grandchildren be good is, therefore, a question in which the complainants in this bill have no concern. It is a point, nevertheless, on which the court are compelled to give an opinion, and the only one in which we have found any difficulty in arriving at a satisfactory conclusion.

It is undoubtedly a general rule in the construction both of wills and deeds of settlement that while the word "issue" will be construed to include grandchildren, the word "child" or "children" will not receive such construction. Hence it has been laid down as an established rule, that a power of appointment to children, will not authorize an appointment to grandchildren. Neither will a legacy or devise to "children," be construed to include grandchildren. And when there is nothing else in the deed or will to show that the testator or donor did not use these words in a different sense, this rule of construction should not be departed from. But every instrument must be construed from its whole

contents taken together, in order to ascertain the true meaning and intention of the party or parties to it. No one isolated word or term can be seized upon and made to absolutely control the rest of the instrument. The testator or donor may have used particular words either in a wider or narrower sense than that given by philologists or judges. The word "issue" may be found from other clauses to have been used to designate a child or children only, and not to include grandchildren. Lord Alvanley has said (Reeves v. Brymer, 4 Ves. 698) that "children" may mean "grandchildren" where there can be no other construction, "but not otherwise." This dictum, like many other acute dicta, must itself be construed with some latitude, as if taken literally it would deny the right of the court under any circumstances to give such construction. But I presume that Lord Alvanley meant no more than that this term could receive no other construction, unless from the external circumstances of the testator the devise, gift or power would fail altogether, as in Gale v. Bennett, Amb. 681, where it was decreed that grandchildren might claim a devise "to children" where there were no children. Or where a more comprehensive meaning must necessarily be given to the word to render it consistent with other clauses of the instrument clearly expressed. Thus in Deveaux v. Barnwell, 1 Desaus. Eq. 499, grandchildren were decreed to take under the words "my surviving children," under the pressure of circumstances which showed that such must have been the intention of the testator; the court saying with Lord Macclesfield, "if there is no precedent it is time to make one." But such a construction should not be made unless a strong case of intention, or necessary implication requires it.

The deed before us shows a clear and indisputable intention to include grandchildren among the beneficiaries of the trust: it makes the issue of a deceased child the representative of its parent, and as much the object of the bounty of the donor as any living child. The clause giving the mother the power to select and distribute unequally among the beneficiaries, and which uses the word "children" only, is immediately followed by that defining the class of beneficiaries as "such of the said children as shall be living at the death of said Margaret" and "the issue of such children as may be dead share and share alike which their parent would have taken if living." Here the donor himself describes the persons meant in the first clause, giving a power of selection and distribution. They are described as the "children," but not as the children surviving at the death of the mother; but all the children of the donor and his wife, the dead to be represented by their issue or offspring if they left any. To construe this power so as to restrict the objects of it to a part of the beneficiaries, would be inconsistent with the clear intention that the

issue of deceased children should stand in "loco parentis." When the deed of settlement was executed, no reason was known why any should be excluded; the grandchildren were equally the objects of the donor's bounty as their parents would have been if alive. If so, the power to select or distribute according to future changes among the objects of their affection in order to its just execution, must be construed to include all the recipients of their bounty. Suppose all the children except one or two died before the mother, leaving issue; the exercise of the right either to distribute or select must be at the expense of nine-tenths of the beneficiaries who would be incapable of receiving anything by appointment. The power to select or distribute cannot be exercised at all, or only injuriously, unless it be as wide as the bounty.

We do not think it would be carrying out the intention of the donor as clearly expressed in this deed, to construe the word "children" so as not to include those deceased before their mother as represented by their issue. Any other construction which would make the exercise of the power of selection or distribution be a necessary exclusion of part of the beneficiaries contrary to the desire of either father or mother, the donor or the donee of the power, would in our opinion be a declaration that the deed is inconsistent with itself, and grossly absurd. We are of opinion, therefore, that the appointments to the grandchildren are valid.

III. Is the appointment to Salvadora a fraud and violation of the trust? It must be admitted that if the bond given by Salvadora to Mrs. Robert Meade stood alone, and without explanation, there would be some plausible grounds for this charge.

It is unnecessary to examine the numerous cases on the subject of fraudulent execution of powers, as we do not consider the facts of this case to bring it within the category. The answer in this case is responsive to the bill and instead of being impeached is fully supported by the testimony of Mr. Gerhard. They amply explain the whole transaction, and show there was no act tending, nor intention on the part of the testatrix to commit a fraud on the power entrusted to her, by improperly diverting the trust fund to herself or others for whom it was not intended. The debt due from Salvadora to her mother was transferred to Mrs. Robert Meade, while the time of payment was extended, till Salvadora should be in funds from the receipt of her share or portion of her expectancy in the trust. The whole transaction was just and honorable, and wronged no one.

Decree: That by the deed, &c., Mrs. Meade had an exclusive power of appointment, &c., which gave her a right to select among the objects of the power; that the appointment of $9,500 to Salvadora was not made in fraud of the power; that the grandchildren were proper objects of the power; and that the

several appointments, including the one of $500 to the complainant, were and are valid appointments under the power.