# IDA VON BEHRN, MARTHA BEARE, SALENA SPRECKELMEYER and NELDA ROHLFING v. FRITZ STOEPPELMANN, Appellant.

## Division One, December 30, 1920.

1. **WILL: Life Estate: Power to Direct Division of Personalty and Realty: The Same.** The testator devised and bequeathed "all my property, both real and personal," to his wife "for the term of her natural life," describing the real estate alone, and then said that "after the death of my wife I give the same unto my children," naming them, "to be divided as my wife may direct." *Held*, that the widow's power to control the division of the estate among the children extended both to the real estate and the personalty, the words "the same" referring to "all my property, real and personal" previously mentioned; and while the children took vested remainders, the widow could divest the remainders by exercising the power to appoint and to determine what portion each appointee should receive.

2. ———: ———: ———: **Vested Remainders: Divestment.** Although the will by giving to testator's widow a life estate in all his property and after her death the same "unto my children" gave to the children vested remainders, yet by further declaring that said vested remainders are "to be divided as my wife may direct by will or otherwise" it empowered the widow to divest the remainders by exercising the power to appoint and to determine what portion each appointee should take. Vested remainders followed by a donation of power to divide the estate among the remaindermen as the life tenant may direct are subject to be defeated by the exercise of the power. But in case of the death of a named vested remainderman during the lifetime of the donee of the power the remainder goes to the heirs of the remainderman, if the power has not been exercised by its donee.

3. **VESTED REMAINDERS: Divestment: Power of Appointment: Imperfectly Exercised.** Where there is a limitation over of remainders to a class, after a life estate, or words to show an intention that the class should take thereafter, but subject to a power of appointment among the class in the life tenant or some one else, then in default of appointment, or in the event of a bad one, the heirs of a remainderman, deceased when the life interest ends, will be given his share. But a good appointment under the power will so defeat the interest of a remainderman that if he dies before the end of the life estate his heirs cannot come in for a

share, as they would have done had there been no appointment. And where the will gave testator's entire property to his wife for her natural life and after her death to six named children, "to be divided as my wife may direct by will or otherwise," whatever interests his children took were subject to be divested, as to the proportion of the share, by an unequal division directed by the widow in executing the power conferred upon her.

4. ———: ———: ———: **To Grandchildren.** Under a power to appoint to the children of a particular person, the power cannot be exercised in favor of the grandchildren of such person. So where the will gave to testator's wife his entire property for her life and after her death to his six children, naming them, "to be divided as my wife may direct by will or otherwise," and one of said children died before the widow, the power given the widow to direct a division of the estate among testator's children gave her no power to appoint a portion to the children of such deceased child.'

5. ———: ———: ———: **Exercise Questioned by Grandchildren.** Under a will giving to testator's widow power to direct the division of his estate among his children after the termination of her life estate, the children of a child whose death preceded that of the life tenant cannot complain of the portion she appointed to them, or that the distribution was unequal, for not only was there no duty incumbent upon the donee of the power to exercise it in favor of such grandchildren, but the law gave her no right to thus exercise it; and whether a deed by which before the life estate terminated she conveyed the major portion of the real estate to two of the six remaindermen was valid, is a matter which such grandchildren are not entitled to have adjudicated.

6. ———: ———: ———: **Fraud Upon the Power.** Whether or not the appointment of a large portion of the estate to two of the six vested remaindermen was a fraud upon the power, because to some extent made for the benefit of the donee, being a point which cannot be raised by the plaintiffs, who are children of a deceased remainderman and not therefore entitled to share in the estate, is not decided, being neither pleaded nor briefed nor otherwise raised.

7. ———: ———: ———: **Illusory.** The fact that plaintiffs were not objects of the power of appointment conferred on the donee precludes them from urging that the appointment to them was illusory, and does not require the court to decide whether the doctrine of illusory appointment is in force in this county.

Appeal from Franklin Circuit Court.—*Hon. R. A. Breuer,* Judge.

REVERSED AND REMANDED (*with directions).*

*John W. Booth* and *Jesse H. Schaper* for appellant.

(1) The will of Casper Stoeppelmann devised and bequeathed all his property, of every kind and description, to his widow, for her life, and after her death to his six children, to be divided among them as she might direct. This constituted a family settlement, and created and conferred on Johanna "a power," in the nature of "a trust." 2 Sugden on Powers, p. 159, par. 5; Washburn on Real Property, pp. 313, 323, par. 27. (2) The creation of a power by will depends upon the intention of the testator; and the will is construed liberally, in furtherance of that intention. Turner v. Timberlake, 53 Mo. 371; Gaven v. Allen, 100 Mo. 299; Norcum v. D'Oench, 17 Mo. 98; 2 Washburn on Real Property, p. 313, sec. 111. (3) The will of Casper Stoeppelmann giving all his property to his wife for her life, and after her death to his children, "to be divided" as she might direct, gave to her authority or "a power" to divide the property among the children of Casper at her own discretion, subject to no legal restriction other than to appoint a share to each child. 1 Sugden on Powers, p. 118, par. 2; p. 121, par. 12; p. 537 et seq., pars. 1, 2, 3, to 11; 31 Cyc. 1066. (4) If the former English doctrine concerning what were termed "illusory appointments" has been adopted in Missouri (and so far as we have found it has not), it is not applicable in this action, in which respondents count only upon an alleged legal title. 31 Cyc. 1137. (5) Powers of appointment need not be executed to the utmost extent at once. They may be executed over the whole estate at once, or at different times, over different parts of the estate. 1 Sugden on Powers, pp. 341, 342, par. 21. (6) Any words indicating an intention to execute a power will have that effect. No direct reference to power is necessary. 1 Sugden on Powers, p. 244, sec. 2, par. 1; Turner v. Timberlake, 53 Mo. 371; Norcum v. D'Oench, 17 Mo. 98; Gaven v. Allen, 100 Mo. 299. (7) Where several

modes of executing a power are authorized in the instrument creating it, it may be executed in such of those ways as the donee may choose. 1 Sugden on Powers, pp. 274, 275, par. 37, and p. 532, sec. 4, par. 1. (8) "If a fund consisting partly of real estate and partly of personal estate be authorized as a common fund to be appointed among several objects, so that each must have a share, yet, it is not necessary to give a part of each fund to each object; but, if there are two, for instance, all the realty may be given to one, and all the personalty to the other." 1 Sugden on Powers, p. 515, par. 11; Morgan v. Surnam, 1 Taunt. 298. (9) Unless an intention is shown in the instrument creating the power of appointment that the appointees shall take equally, the donee may appoint such share as he thinks fit, provided, in some jurisdictions, none of them are illusive. 31 Cyc. 1067. (10) "In the absence of a statute a power of appointment among the children generally, or among particular children of a donor, donee, or other person, does not authorize either a general or partial appointment to his grandchildren or remoter decendants, even though there be no children living at the time the power is executed, unless an intention to include grandchildren is manifest from the instrument creating the power." 31 Cyc. 1061. (11) "A power given by will to divide or appoint an estate among the testator's children as the donee may see proper, etc., is properly executed by devising land to one or more of the children, and charging it with pecuniary legacies in favor of the others." 31 Cyc. 1071; Allder v. Jones, 98 Md. 101; Darling v. Edson, 4 Pa. Super. Ct. 498. (12) "A power to appoint land authorizes in equity a charge thereon for the benefit of an object of the power." 31 Cyc. 1071.

*W. L. Cole* and *James Booth* for respondents.

(1) Under a proper construction of the will in question, none of the authorities cited by appellant are

applicable. Because the testator must be presumed to have known what words he was using in the will, and the peculiar relation of those words to the general context of that will, he must be held to have known the laws of nature, that the personal property would all be consumed or go to waste before the death of the widow; its small value as compared to the bulk of his estate and the language of the will, "After the death of my wife, I give the same to my children (naming them), to be divided as my wife may direct by will or otherwise," following immediately after a specific description of the real estate, must be held to apply to the real estate only. Sec. 583, R. S. 1909; Byrns v. France, 131 Mo. 639; Colliers Will, 40 Mo. 287. (2) The law favors vested estates, and by the will all of the children named took a vested interest in remainder in the real estate. This interest so vested could not be divested by any act of the widow. Sec. 578, R. S. 1909; Newell v. Kern, 218 S. W. 444; Huntington Real Estate Co. v. Megaree, 217 S. W. 301. (3) The power, if it be a power conferred by the will on Johanna, was merely to divide an existing estate "by will or otherwise." The power was a naked and special one, with no right in Johanna to exclude any of those giving a vested estate by the will. Colliers Will, 40 Mo. 287; 31 Cyc. 1066, 1148. (4) The authority conferred on Johanna by the will was not to create or vest a title by any act of hers; that title had been vested in the children by the express terms of the will; only the right to possession was postponed until the death of the life tenant. The life tenant was given authority to fix the boundaries of the lands set apart to each by her; but seizin was in the devisees, independent of any act of hers. The devisees took under the will and not under any power of appointment conferred on Johanna. Harrison v. McReynolds, 183 Mo. 533; Armor v. Frey, 253 Mo. 447. (5) The doctrine of illusory appointments has no abiding place in this case. Here there is no complaint made

of an unfair division; but the complaint is that no division was made. These plaintiffs received nothing.

GOODE, J.—This action was filed to have partitioned a tract of land in Franklin County of the following description:

"All that part of the east half of the northeast quarter, and the east half of the southwest quarter of the northeast quarter of Section Twenty-six, Township Forty-five, Range Four west, which lies north of the old Hermann and Washington County Road, in Franklin County, Missouri."

The allegation of the plaintiffs is that each of them is entitled to an undivided one twenty-fourth (1/24) interest in said real estate, or a total of one-sixth, and the defendant is entitled to an undivided five-sixths.

The answer, besides a general denial, pleads adverse possession by the defendant for more than ten years before the action was begun, and then sets up a third defense resting upon the material facts in the case, which are pleaded in the answer and to be stated.

Casper Stoeppelmann died in Franklin County, July 16, 1881, leaving a widow, Johanna Fredericke Stoeppelmann, and six children, namely: Mathilde, married to Henry Rohlfing; Mary, married to John Kohlbusch; Henry, John, William and Fritz Stoeppelmann.

Said Casper Stoeppelmann died testate and by his will provided as follows:

"I give, devise and bequeath all my property, both real and personal, unto my beloved wife, Johanna Friedericke Stoeppelmann, for the term of her natural life. The real estate being known and described as east half of northeast quarter, the northeast quarter of the southeast quarter and the east half of the southwest quarter of the northeast quarter all of Section Twenty-six, Township Forty-five, Range Four, west, the whole containing one hundred and thirty-seven acres.

"After the death of my wife I give the same unto my children, to-wit: Mathilde, wife of Henry Rohlfing; Mary, wife of John Kohlbusch; Henry Stoeppelmann; John Stoeppelmann, William Stoeppelmann and Fritz Stoeppelmann, to be divided as my wife may direct by will or otherwise:"

This suit is for the partition of the north half of the tract of 137 acres described in the will, and the source of the supposed interest of the plaintiffs in the land will appear as we proceed with the facts.

Johanna Fredericke, the widow, was fifty years old at the time of the death of her husband, and survived him for nearly thirty-five years, as she died in the early part of the year 1916.

Mathilde, one of the daughters who was married at the time of her father's death, died intestate in the year 1897, and in the lifetime of her mother, Johanna Fredericke. Said Mathilde left as her heirs at law the four plaintiffs in this case, to-wit: Ida Von Behrn, Martha Beare, Salena Spreckelmeyer and Nelda Rohlfing, who claim an interest in the land in controversy as such heirs.

Shortly after the death of Casper Stoeppelmann, Johanna Fredericke, the widow, qualified as executrix of the will, although she was not named executrix, and administered and settled the estate in that capacity, with the approbation of the probate court. Her final settlement, dated December 4, 1883, showed a balance of $1814.39 personal property, which was credited to her as received by her under the will. The testimony as to the value of the entire 137 acres of land devised by the will of Casper shows it was worth about thirty-five hundred dollars when Casper died.

Mrs. Johanna Fredericke Stoeppelmann shortly after the death of her husband began to divide among the children the personal estate he had left, not waiting to do this by her last will, or in any other mode to make the division take effect after her death.

(a)   In this division it is asserted by the defendant that $600 was received by Henry Rohlfing, the husband of Mathilde, for said Mathilde, and as appointed to her by her mother, Johanna Fredericke, under the power given in Casper's will.   This receipt, signed by Henry Rohlfing, was taken by Johanna Fredericke:

"$600.00    Berger, Mo. Aug. the 5, 1881.  Received of Johanna F. Stoeppelmann, Ex. of Casper H. Stoeppelmann, the sum of six hundred dollars."

Henry Rohlfing testified that although he signed the receipt at the request of Johanna Fredericke, it was not for any money she paid to him from the estate, but simply because she wanted the receipt.   He said the $600 had been given to him by Casper Stoeppelmann in April, 1881, a few months before the death of said Casper, to pay for some land Henry had bought.   The latter testified he asked Casper for a loan of the money and Casper said he would make him a present of it. This testimony was contradicted by a witness, Judge Schaper, who said that in 1913 Henry Rohlfing told him that he, Henry, got the money—the amount stated in the receipt—and that he signed the receipt for his wife, Mathilde Rohlfing.

(b)   On March 27, 1883, Johanna Fredericke paid to John Kohlbusch, the husband of her daughter Mary, $600, and took the following receipt:

"600    Franklin Co. Mo. March 27, 1883.

"Received of Mrs. Johanna Stoeppelmann the sum of six hundred dollars, as part payment due from the estate of Casper Stoeppelmann deceased.

"JOHN KOHLBUSCH."

(c)   On December 1, 1884, or thereabout, Johanna Fredericke paid to her son Henry $400 in cash, as an appointment under the will of Casper.

(d)   On June 10, 1885, she paid in the same way to her son John $500.

These were all the payments or appointments made under the will until January, 1913.   It will be perceived

that if the $600 paid to Henry Rohlfing is included among
the appointments made by Johanna Fredericke under
the will that said appointments were to the four older
children, to-wit: Mathilde, or to Henry Rohlfing, her
husband, for her; to Mary, or to John Kohlbusch, her
husband, for her; and to the sons Henry and John
Stoeppelmann.

The two youngest children, William and Fritz, and
also John, were, at the death of their father, Casper,
on the land he left, that is, they were living with their
parents on the home place. John soon went away, leav-
ing William and Fritz with their mother, with whom
they remained until they were of age.

In the year 1888, an agreement was made between
the mother, Johanna Fredericke and the two boys, Wil-
liam and Fritz, to this effect in substance: If the boys
would stay with her, tend to the farm, and furnish her
a living, she would give the north part of the land (the
part in controversy in the present suit) to Fritz, and
the south part to William, the division between the two
parts being a county road. But the boys were to pay
$1300, or $650 each, to be divided among the other chil-
dren in order to properly equalize the appointments to
the several children. Johanna Fredericke stated at the
time of this agreement that she had divided up the money
among the older children and had nothing to give the
boys but the land. They testified they allowed the moth-
er one-third of the wheat every year, her fuel and
board; that she bought most of her clothes and continued
to pay the taxes on the land up to the year 1913. The
agreement was verbal, and was not put into any writing
which took effect, until the 16th day of January, 1913,
when a deed was executed, which will be referred to
presently.

There is testimony tending to prove that about the
date of said verbal agreement the mother made a will,
drawn by F. W. Pehle, a citizen of Franklin County who
had held official positions, but was not a lawyer. This
testimony goes to show said will was pretty much like

the last will made by said Johanna Fredericke, which, we understand, was made to correct some mistake of description in the first.

The deed by which the land was appointed to William and Fritz Stoeppelmann recited that Casper Stoeppelmann had devised and bequeathed to Johanna Fredericke, his wife, for the term of her natural life, all his property, both real and personal, the real estate being described as follows (Describing it); that by his last will "said testator gave the same, after the death of his beloved wife, to his children, to-wit: Mathilde, wife of Henry Rohlfing; Mary, wife of John Kohlbusch; Henry Stoeppelmann; John Stoeppelmann; William Stoeppelmann, and Fritz Stoeppelmann to be divided as his said wife may direct, by will or otherwise."

The deed then goes on to recite that said Johanna Fredericke, by virtue of the power conferred on her by the last will of her husband, Casper, had theretofore divided and paid over a portion of said property in money, as follows: To Mathilde, wife of Henry Rohlfing, the sum of six hundred dollars; to Mary, wife of John Kohlbusch, the sum of six hundred dollars; to Henry Stoeppelmann, the sum of four hundred dollars; and to John Stoeppelmann, the sum of five hundred dollars. It said, too, the said Johanna Fredericke was desirous of making a further division of the said property "among said children *and the children of Mathilde Rohlfing, now deceased,* in accordance with the power upon me conferred by said last will and testament." (Italics ours.) There is a further recital that, for the purpose of the division of said property and to equalize the division as far as possible among the said children, considering the division theretofore made, "said William Stoeppelmann and Fritz Stoeppelmann have paid to me, share and share alike, the sum of thirteen hundred dollars, cash in hand, the receipt of which I do hereby acknowledge." The deed then recited that in consideration of the premises and the said sum of thirteen hundred dol-

lars, and by virtue of the power conferred by the last will of Casper Stoeppelmann, "I do hereby give, and convey said moneys and real estate, together with immediate delivery of possession thereof, to the above named children absolutely and forever as follows, to-wit: To Ida, Martha, Salena and Anelda Rohlfing, children of my beloved daughter, Mathilda, wife of Henry Rohlfing, each the sum of fifty dollars, the receipt of which is acknowledged by them. To Mary Kohlbusch, wife of John Kohlbusch, the sum of two hundred dollars, the receipt of which is acknowledged by her. To Henry Stoeppelmann, the sum of four hundred dollars, the receipt of which is acknowleged by him. To John Stoeppelmann, the sum of five hundred dollars, the re-receipt of which is acknowledged by him. To William F. Stoeppelmann, all that part of the above described real estate lying, being and situated south of the old Hermann and Washington County Road, to have and to hold the same unto the said William F. Stoeppelmann, his heirs and assigns absolutely and forever. To said Fritz Stoeppelmann, all the remainder of the real estate first above described, lying being and situated north of the said old Hermann and Washington County Road, to have and to hold unto him, the said Fritz Stoeppelmann and to his heirs and assigns absolutely and forever." Said instrument was executed and acknowledged by Johanna Fredericke and William and Fritz Stoeppelmann and was filed for record on February 24, 1913.

At the foot of it and below the signatures of the parties aforesaid, appears the following: "Received and accepted by: Mary Kohlbusch, Henry J. Stoeppelmann, John Stoeppelmann."

On the day the deed was executed there was a meeting of the persons interested, at the office of Judge Schaper in New Haven, Franklin County, they having been invited to come to the office, it appears, in order to have them all agree to the disposition of the property made in the deed; but the four plaintiffs, daughters of Mathilde Rohlfing, refused to acquiesce, or to accept

the $200 which was offered them as the balance due them out of the part of the estate of their grandfather which their grandmother had appointed to their mother. Mathilde, and afterwards they filed this suit claiming to own, as stated above, and undivided one-sixth interest in the land conveyed to Fritz Stoeppelmann.

Johanna Fredericke's last will was dated December, 1897, the daughter Mathilde having previously died. In that will she disposed of the property as she disposed of it by the aforesaid deed. She bequeathed $200 to the plaintiffs, to be divided among them equally; two hundred dollars to Mary, wife of John Kohlbusch; four hundred dollars to Henry Stoeppelmann; and five hundred to John Stoeppelman; of which bequests William and Fritz were each to pay one-half, and she devised the lands of the estate to William and Fritz in the same manner as it had been conveyed by deed. She provided also that her grandchildren, the children of Mathilde, should be considered as one heir. On the settlement of her estate by her executors, there was a balance remaining in it of $200.88, which was the money intended for these plaintiffs according to the terms of the aforesaid deed and of the will of Johanna Fredericke Stoeppelmann.

After setting up substantially the facts aforesaid, the answer avers that by reason of them the defendant is the sole owner of the land sought to be partitioned. No declarations of law having been requested, the court found the plaintiffs and the defendants were tenants in common of the land in controversy, that the plaintiffs each own an undivided one twenty-fourth thereof, and the defendant the remaining undivided five-sixths; that the land was not susceptible of division in kind without prejudice to the interest of the parties; wherefore it was ordered the premises be sold by the sheriff and the proceeds divided among the parties according to their interests as determined by the judgment.

It should be stated that the defendant Fritz Stoeppelmann had put improvements on the land conveyed

to him, to the amount of three thousand dollars perhaps, which improvements were made at different times after the verbal agreement of 1888.

From the aforesaid judgment the defendant appealed.

I. For the plaintiffs this interpretation of the will of Casper Stoeppelmann is propounded as the sound one: (A) That the power of the widow, Johanna Fredericke, under said will, to direct the division of the property after her death among the children, applied only to the land. (B) By the will all the children took a vested interest in remainder in the land, which could not be divested by any act of the widow.

The will of Casper first devised and bequeathed "all of my property, both real and personal, unto my beloved wife, Johanna Fredericke Stoeppelmann, for the term of her natural life," then described the real estate; next said, "after the death of my

Vested Re-
mainders:
Diversion:
Power of
Appointment.

wife I give the same unto my children, to-wit (naming them), to be divided as my wife may direct by will or otherwise." There is nothing in the provisions of the will to lend support to the proposition that the widow's power to control the division of the estate among the children, extended only to the land, except that the description of the land immediately preceded the gift to the children; a circumstance of no weight; for both the real and the personal property were given in the same paragraph to the widow for life; and in the next paragraph, "*the same*" were given to the children and to be divided as the widow might direct. Clearly the words "the same" refer to the total estate previously given to the widow; not merely to the real estate just before described, but devised to her along with the personalty. The intention of the testator was to vest both estates in his wife for life, with power to direct the proportions in which both should be divided among the children after her death. This was the construc-

tion given to a similar testamentary clause by the court
of common pleas in Morgan ex. dem. Surman v. Sur-
man.   That testator had given "all the residue of his
real and personal estate whatsoever  .   .   .   unto his
wife, Eleanor Surman, for her to receive the rents and
profits  .   .   .   during her natural life,  .   .   .   and
after her decease, then he gave and bequeathed the same
unto his children, *to be parted among them as she should
think proper.*" (Italics ours.)  The testator died leav-
ing six surviving children.  The widow by will gave
nearly the whole of the estate (but charged with legacies
to John, Mary and William) to her two youngest chil-
dren, James and Francis, cutting off Thomas, the eldest,
with a guinea, reciting that he had been settled in busi-
ness in his father's liftetime, thereby receiving his
share.   The son Thomas brought ejectment for an in-
terest in the real property, laying a fictitious demise ac-
cording to the old manner of pleading.  The plaintiff
contended the words "the same" in John Surman's will,
referred only to the real property, and that the appoint-
ments made by the widow were bad, because they pro-
ceeded on the theory of the power to appoint including
the personalty, and gave all the realty to two of the child-
ren and only personalty to others; whereas she should
have appointed only the real estate among them.  Lord
Mansfield said upon the point, that "it was impossible
to apply the word *same* to one sort of property and
not to the other  .   .   .   It seemed the most rational
construction to say the testator meant that she (the
widow) should take the whole for her life only."  [1
Taunt. 289, 297.]

        We agree the children took vested remainders, as
said by the attorney for plaintiffs, but decline to agree
that the widow could not divest the remainders by exer-
cising the power to appoint conferred on her by her
husband's will.  As to the nature of this power it was
limited and in trust for the benefit of the children.
(Jarnagin v. Conway, 2 Humph. (Tenn.) 50; 1 Perry
Trusts (6 Ed.), secs. 248 et seq.; Brown v. Higgs, 4

Ves. 708), and was non-exclusive and to be used for the benefit of all, without the right to select some as appointees to the entire exclusion of others, but with the right to determine what portion each should receive; unless, perchance, an appointment might be annulled as illusory. [Fidelity Trust Co. v. Barret, L. R. A. 1916D, 493 and cases cited in the briefs in said case.]

We have found neither in judgment nor treatise, unless it be in a Pennsylvania case to be noticed later, any authority for the proposition that remainders followed by the donation of such a power are not subject to be defeated by the exercise of the power, but in case of the death of a remainderman in the lifetime of the tenant for life, must go to the heirs of the deceased remainderman. The great weight of decision and of comment is to the contrary. In cases where, as here, there is a limitation over of remainders to a class, after a life interest, or words to *show an intention* that the class should take thereafter, but subject to a power of appointment among the class in the life tenant or someone else, then, in default of an appointment, or in the event of a bad one, the heirs of a remainderman, deceased when the life interest ends, will be given his share by the courts. [1 Perry on Trusts (6 Ed.) sec. 250; Minor & Wurtz, Real Prop., secs. 1046, 1052; Herrick v. Fowler, 108 Tenn. 410, 419; Lambert v. Thwaites, L. R. 2 Eq. 151; Casterton v. Sutherland, 9 Ves. 445; Wilson v. Duguid, 24 Ch. Div. 244.] But all those authorities recognize the rule that a good appointment under the power will so far defeat the interest of a remainderman that if he dies before the end of the life interest his heirs cannot come in for a share, as they would have done had there been no appointment. The contrary rule would render the power to appoint nugatory, and frustrate the purpose of the donor; for the power is conferred in order that the beneficiaries shall take according to the judgment of the donee of the power and not as they would were no power given. Says Perry in the cited passage: ''In some cases the donor makes a

direct gift to one party, but subjects the gift to the discretion or power of some previous taker or other party; as if a donor limit a fund 'upon trust for the children of A as B shall appoint.' In such case the children of A take a vested interest in the subject of the gift, liable to be divested by the exercise of the power by B. Therefore on the failure of the power, the children of A become as absolutely entitled as if the discretion or power had never been given to B.'' The author, in the same section points out that if the estate is vested in the donee of the power to dispose of it among the children of A, the children get nothing by the gift, but can acquire an interest only through the exercise of the power. That text clearly elucidates the law applicable to the immediate point.

In Lambert v. Thwaites a post-nuptial settlement conveyed property to trustees to pay the rent to a husband and wife for their lives and the life of the survivor, and at their death to sell the property and divide the same among the children of the husband as he might direct. The husband had seven children at the date of the settlement, but one died in the lifetime of his father; and when the father died, he left no appointment. It was asserted by the heirs of the deceased son that the latter took a vested interest under the settlement and at the date of it, and as the power was never executed, this interest went to the heirs. The vice-chancellor so decided and rendered an opinion wherein many cases were examined. The reason of the decision was that there was a gift over in the post-nuptial settlement after the life tenancies to all the children. The opinion said along with other reasoning, at page 155, that it was ''an elementary principle in the doctrine of powers, though once disputed . . . that the existence of a power of appointment does not prevent the vesting of property until, and in default of, the execution of the power. The exercise of the power will divest the estate; but until the power is exercised, it remains vested in those who are to take in default of

appointment. This is now perfectly well settled and has been so ever since the well known case of Doe v. Martin, 47 T. R. 39, in 1790.'' The opinion then defines the principle of the distinction between the instances where the instrument to be construed gives property to a class with a power in a third person ''to appoint in what shares and in what manner that class shall take,'' and instances where the instrument makes no gift to the class, but only gives a power to a third person to give the property as he sees fit among the class. The distinction is drawn much as Washburn states it.

We deem it clear beyond question that whatever interests the children of Casper took under his will were subject to be divested as to the proportion of the shares by an unequal division directed by his widow in executing the power conferred on her. [See besides cases already cited Haywood's Heirs v. Moore, 2 Humph. (Tenn.) 584; Cathey v. Cathey, 9 Humph. 470; Bostick v. Winton, 1 Sneed (Tenn.) 524, 538; Thorington v. Hall, 111 Ala. 323, 56 Am. St. Rep. 54; Smith v. Camelford, 2 Ves. Jun. 697, 30 Eng. Reprint, 848.]

II. Appointments were made by Casper's widow within a few years after his death, to Mary Kohlbusch, daughter, and to Henry and John Stoppelmann, sons, **Grandchildren.** and if the six hundred dollars Henry Rohlfing received was for his wife, as there is evidence to prove it was, then also to Mathilde, the mother of the plaintiffs. And there had been a verbal, and perhaps invalid, appointment of the land to William and Fritz. Of course, the dispositions made by the will of Johanna Fredericke could not take effect until she died, and meanwhile the deed had become effective; so we will concern ourselves with the latter instrument.

The vital question is whether the plaintiffs as grandchildren of Casper Stoeppelmann have any standing to complain of the mode in which their grandmother appointed the division of the estate. The answer to

this question depends on whether the donee of the power, Mrs. Johanna Fredericke Stoeppelmann, was bound to appoint a portion to these plaintiffs, or rather whether she could do so if she wished. Not only was there no duty incumbent upon her to exercise the power in favor of the plaintiffs, but the law gave her no right to thus exercise it. The practically unbroken current of authority is that the power given to appoint among children does not extend to grandchildren. Going back to a classical treatise on the subject of powers, we find this statement of the law: "Now it is incontrovertibly settled that grandchildren are not objects within a bare power to appoint to children, and it would be highly mischievous if this broad rule were to be cut down by a minute inquiry in every case, whether there are not words in the power tantamount to 'strict settlement,' so as to embrace grandchildren according to the *supposed* intention." [2 Sugden, (3 Am. Ed.) p. 235.]

Washburn says, "So ordinarily a power to appoint to children does not authorize an appointment to grandchildren." [2 Real Prop. (6 Ed.) sec. 1691.] Another treatise in defining the objects of a power, says, "The term 'children' as used in limited powers to appoint to 'children,' has been generally held to include only offspring or descendants of the first degree and not to include grandchildren or remoter descendants; and therefore, under a power to appoint to the children of a particular person, the power cannot be exercised in favor of the grandchildren or remote descendants of such person." [22 Am. Eng. Enc. Law (2 Ed.), p. 1134, and numerous citations in the notes.]

Still another treatise says, "In the absence of a statute, a power of appointment among the children generally, or among particular children, of a donor, donee, or other person, does not authorize either a general or partial appointment to his grandchildren or remoter descendants, even though there be no children living at the time the power is executed, unless an intention to include grandchildren is manifest from the

instrument creating the power." [31 Cyc. 1061, and citations in notes.

Another sound text-writer says: "Thus a power of appointment to children will not support an appointment to grandchildren, unless in some unusual cases, strongly impregnated with circumstances, such as the non-existence of children at the time when the power was created, and the impossibility of other children being subsequently born, which clearly show an intention to refer to grandchildren under the name of children." [Tiedeman Real Property (3 Ed.), sec. 412.] These texts are supported by many adjudged cases. [Thoring-ton v. Hall, 111 Ala. 323, 56 Am. St. 54; Jarnagin v. Conway, 2 Humphreys (Tenn.) 50; Herrick v. Fowler, 108 Tenn. 410, 420; Carson v. Carson, 62 N. C. 57; Smith v. Hardesty, 88 Md. 387, 390; Hood v. Haden, 82 Va. 588, 595; Snoddy v. Snoddy, 1 Strobhart's Eq. 84, 87; Bristow v. Warde, 2 Ves. Jun. 336, 30 Eng. 660; Smith v. Camelford (Lord), 2 Ves. Jun. 697, 30 Eng. Ful. Reprint, 848; Alexander v. Alexander, 2 Ves. Sen. 641, 28 Eng. Reprint, 408; Hewitt v. Lord Dacre, 2 Keen, 622, 48 Eng. Reprint, 768; Cruse v. McKee, 2 Head, 1, 73 Am. Dec. 186.] The power of Casper Stoeppel-mann's widow to direct a division of the estate among their children gave her no power to appoint any portion of the estate to the plaintiffs as grandchildren.

The single decision we have found that is the other way is Schwartz's App., 168 Pa. St. 204. That case only went so far as to say, that, upon the death of one of the children, the estate which had been devised over, went to his daughter and an appointment to her was a proper exercise of the power. The court declined to pass upon the point, as it was not involved, of whether the donee of the power "could determine the relative proportions of the shares and make an unequal distribution." Of course, where there is a power of appointment among children, as in the case at bar, the very purpose of conferring the power is to vest the donee with a discretion about the division of the estate. If the estate must vest

permanently and follow the law of descent, there is no reason whatever for giving such power.

It follows from the foregoing principles and authorities that as these plaintiffs were not entitled to be appointees, they have no right to question the division of the estate directed by their grandmother.

Although not obligated, nor even entitled, to recognize the plaintiffs in the distribution of the estate, the widow appointed to them two hundred dollars to be divided equally among them, treating them as one heir and providing for them to receive the portion their mother would have received had she lived. All the children have acquiesced in this disposition in favor of the plaintiffs; therefore it properly may be carried out, but is not a matter for judgment to be given on in the present case.

The point of doubt which has occurred to us, is whether the appointments made by the widow to Fritz and William were a fraud upon the power, be **Fraud** cause to some extent made for her benefit as **Upon** the donee. It is clear from the record that **Power.** the widow intended to observe the will of her deceased husband in good faith and disposed of the estate according to that purpose. She was entitled to the income of the farm for her life, and she required the two boys to whom she gave it, to pay thirteen hundred dollars to be divided among the other persons whom she regarded as entitled to share in the estate, including, to the amount of two hundred dollars, the children of the deceased daughter, Mathilde, the payment to Henry Rohlfing being treated as made to his wife, Mathilde. Obviously, Mrs. Stoeppelmann aimed at an approximate equality of distribution. The point of whether there was a constructive fraud on the power has not been briefed or even suggested, nor do we think it could be raised by these plaintiffs, who were not objects of the power, so this question does not call for decision.

Something is said in the brief for defendant re-garding the doctrine of illusory appointments not being in force in this country. We have no occasion to pass on that proposition. The appointment to the plaintiffs would hardly be declared illusory in any event. But the fact that plaintiffs were not objects of the power of appointment conferred on Mrs. Stoeppel-mann, would preclude them from urging that the appointment to them was illusory.

Illusory.

The judgment is reversed and the cause remanded with the direction to enter judgment for the defendant. All concur.