RAYMOND H. CATHELL, Executor of the Last Will and Testament of Alice I. Cathell, late of New Castle Hundred, County of New Castle and State of Delaware, and RAYMOND H. CATHELL, Executor and Trustee under the Last Will and Testament of Alice I. Cathell, deceased,

*vs.*

LORENA CATHELL BURRIS, WILLIAM CATHELL, RAYMOND CATHELL, PAUL CATHELL, JAMES CATHELL, WILLIAM JAMES WILLIAMS, sometimes known as William James Williams Cathell, DONALD GEORGE WILLIAMS, sometimes known as Donald George Williams Cathell, RAYMOND H. CATHELL, Trustee by appointment of the Chancellor of the State of Delaware for Ruth Cathell, ALICE CATHELL SYLVESTER, sometimes known as Alice Cathell Sylvester, GEORGE EDWARD CATHELL and RAYMOND H. CATHELL.

*New Castle, June* 24, 1936.

*John B. Jester* for complainant.

*William S. Potter,* of the firm of Ward & Gray, for the guardian *ad litem* of Raymond Cathell, Paul Cathell and James Cathell.

*John B. Jester,* for the guardian *ad litem* of William James Williams, sometimes known as William James Williams Cathell, and Donald George Williams, sometimes known as Donald George Williams Cathell.

THE CHANCELLOR: The first question which this case presents is whether a power of appointment conferred upon Alice I. Cathell by the will of her late husband, William E. Cathell, was executed by her in the will which is now before the court.

The will of William E. Cathell which bestowed the power gave to his wife, Alice, a life estate in all the lands of which he died seized, and then proceeded as follows:

"* * * with full power in her, my said wife, to dispose of my said lands and premises by will to and among my children her and me surviving, in such manner and in such shares or portions as to her shall seem proper and best.

"I do however hereby vest in my said wife full power and authority in her discretion to sell such part or all of my said real estate as she, should circumstances demand, may deem advantageous, provided each of my children then living shall by joining in any necessary instruments of conveyance indicate and express their complete willingness and acquiescence to such transaction, and to give and convey a good and valid title to any lands and premises so sold, freed and discharged from any trust or otherwise and without liability on the part of purchaser as to the application, non-application or mis-application of the purchase money.

"At and upon the re-marriage of my said wife, or her death (should she die intestate), it is my will and I direct that all my estate then remaining unsold shall be divided in accordance with the intestate laws of the State of Delaware, the issue of any deceased child to take, in equal shares if more than one, the share of such parent so deceased."

Among the lands of which William E. Cathell died seized was certain real estate located at Hazeldel, in New Castle Hundred, New Castle County, this State. His widow possessed said real estate up to the date of her death, never having exercised the power of sale during her lifetime. She never remarried. Her last will and testament directed her executor to "convert all my real estate, located at Hazeldel, including the home farm and buildings, into cash * * *" and directed

"The proceeds from the sale of my real estate at Hazeldel shall be divided into five equal parts, one of which parts I give and bequeath unto Raymond H. Cathell, absolutely, upon the following trusts and purposes, that is to say, to hold in trust for Lorena Cathell Burris, William Cathell, Raymond Cathell, Paul Cathell and James Cathell, children of Lorena Cathell, of Wilmington, Delaware, by my deceased son, William James Cathell; William James Williams, sometimes known as William James Williams Cathell, and Donald George Williams, sometimes known as Donald George Williams Cathell, children of Rita Williams, sometimes known as Rita Williams Cathell, now or late of Boston, Massachusetts and to divide the net income therefrom between the said Seven children or the survivors of them, share and share alike, and as each of said Seven children reach Twenty-one they shall receive their share or principal of the trust fund, absolutely, and when the youngest of said children has reached Twenty-one and received his or her share of said trust

fund or principal, said trust shall cease and terminate, at which time if there should by chance be any surplus or residue left from said trust fund, the same is to be divided equally among said children, share and share alike, absolutely.

"During the existence of the trust estate for the aforementioned Seven children, the net revenue derived from said trust estate shall be paid semiannually to the mothers of said children respectively or to the guardians of said children, if there be guardians.

"The other Four shares I give and bequeath unto my children, Ruth Cathell, Raymond H. Cathell, Alice Cathell Sylvester and George Edward Cathell, share and share alike, or the survivors of them, absolutely, the lawful issue of any of them to receive the share that they would have received if living."

Alice I. Cathell, the testatrix and donee of the power under her husband's will, possessed no interest in any real estate located either at Hazeldel or any other place over which she had power of testamentary disposition in her own individual right. The reference in her will to the real estate located at Hazeldel, which she referred to as "my real estate" must *ex necessitate* be understood as referring to the real estate there located which her husband had owned and over which he had given her the power of testamentary appointment. An intention to execute a power is sufficiently demonstrated where reference is made to the property which is the subject on which it is to be executed. This was stated in the leading case of *Blagge v. Miles, Fed. Cas. No.* 1,479, 1 *Story*, 426, and was accepted as the settled rule in *Lane v. Lane*, 4 *Pennewill*, 368, 55 *A.* 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122, decided by the Supreme Court of this State in 1903. It is plain that the testatrix intended to execute the power.

The next question which the bill presents has to do with the parties entitled to share in the proceeds of sale derived from the real estate. The will directs that the proceeds shall be divided into five equal parts. It is with respect to only one of these parts that the trustee under the will is in doubt. That part is directed to be held in trust for the seven children, five of whom are legitimate and two of

whom are illegitimate, of William James Cathell, a son of said William E. Cathell and Alice I. Cathell, who survived his father but pre-deceased his mother.

The power conferred by the donor upon his wife was a restricted one. It was, to dispose of the lands by will to and among "my children her and me surviving." In executing the power the donee undertook to embrace grandchildren among those designated as its objects. The question, then, is—can grandchildren fall within the designation "children"?

The general rule is that in the absence of a context indicating an intent to the contrary, "children" does not embrace "grandchildren." *Johnson v. Johnson, et al.,* 17 *Del. Ch.* 425, 149 *A.* 306; *Security Trust etc., Co. v. Lockwood, et al.,* 13 *Del. Ch.* 274, 118, 225. This rule has been applied, as indeed it could not in reason be not applied, in ascertaining the objects of a power as well as in ascertaining beneficiaries of a direct gift. *Cruse, Adm'r., v. McKee, et al.,* 2 *Head (Tenn.)* 1, 73 *Am. Dec.* 186; *Herrick v. Fowler,* 108 *Tenn.* 410, 67 *S. W.* 861; *Von Behrn v. Stoeppelmann,* 286 *Mo.* 73, 89, 226 *S. W.* 875 (880) ; *Horwitz v. Norris,* 49 *Pa.* 213; 2 *Sugden on Powers,* (3d *Am. Ed.*) *253.

It is contended on behalf of the grandchildren, however, that context is to be found in the will of William E. Cathell, the donor of the power, which justifies the view that he intended the word "children" to include grandchildren. Of course the donor's intent is to be indulged the privilege of definition. But can it be said that the context of the donor's will shows an intent to use the word children in such an amplified sense as to take in grandchildren? Two suggestions are advanced as demonstrating such an intent. One is that when he gave a power to his widow to sell at any time during the continuance of her life estate, he annexed as a proviso to the exercise of the power of sale a condition that each of his children then living should express assent by joining in the conveyance. This indicates, it is argued,

that he considered that all of his children who survived him had an interest in the property of a vested character and if so, in the event of the death of any one, that one's children must have been in the testator's mind as among the possible beneficiaries of the power's exercise. The error in this argument lies in relating the adverb "then" to the time of the testator's death. It is referable rather to the time of sale. If so the argument instead of being supported becomes refuted, because it then becomes apparent that the donor recognized only those children as having an interest in the property who might continue to be living at some future time after his death. If when a sale was made a child had died leaving children, the acquiescence of such children in a sale was not necessary. This indicates, if anything, a complete obliteration of all interest on the part of the deceased child and his line. Not only so, but when the power to appoint by will is conferred on the widow, it is to dispose of the lands "to and among my children her and me surviving." This language emphasizes what the other indicated, namely, that the objects of the donor's concern were children in the strict sense of the term. The children who were qualified as appointees must be survivors not alone of the donor but of the donee of the power. If a child died before the donee, all view of that child as a possible appointive beneficiary disappeared; from which we are to conclude that the children of such a child were not in the donor's contemplation.

The second suggestion that is advanced as showing the donor intended children to include grandchildren arises out of the disposition which the donor made of the estate in default of appointment. The provision in this particular is that in default of appointment the estate "shall be divided in accordance with the intestate laws of the State of Delaware, the issue of any deceased child to take, in equal shares if more than one, the share of such parent so deceased."

The reports contain many cases where it is held that if from the whole will it appears that the word children

is used synonymously or appositely with issue or descendants or heirs, the word will be given as broad a meaning as its use in the indicated sense demands. Illustrative cases of that character are the following. *Fowler v. Cohen,* 21 *Beav.* 360, 52 *Eng. Reprint* 898; *Harley v. Mitford,* 21 *Beav.* 280, 52 *Eng. Reprint* 867 *Dalzell v. Welsh,* 2 *Sim.* 319, 57 *Eng. Reprint* 808; *Ex parte Williams,* 1 *Jac.* & *W.* 89, 37 *Eng. Reprint* 309; *Hillen v. Iselin, et al.,* 144 *N. Y.* 365, 39 *N. E.* 368. In the instant case, however, the context nowhere approaches in analogy that found in these illustrative cases.

Two cases, however, are cited which are relied upon as close in their analogy to this one and which therefore are cited as persuasive of the result which ought to be here reached. Those cases are *Deveaux v. Barnwell,* (1796) 1 *Desaus. Eq.* 190, and *Ingraham v. Meade,* (1855) *Fed. Cas. No.* 7,045, 3 *Wall. Jr.* 32.

In *Deveaux v. Barnwell, supra,* there was a power of appointment and what was not appointed was directed "to be sold and the money divided amongst all my children." Two children had pre-deceased the testator, leaving children. The court held that the grandchildren were entitled to their parents' shares in what had not been appointed. The word children was thus made to include grandchildren. From the report of the case, I can discover no context which would support that interpretation. The case appears to be in direct conflict with the established rule that in the absence of elucidating context the word children does not include grandchildren. If that case be sound law, it would seem that if a testator wished his children and them alone to share the benefaction of his bounty to the exclusion of grandchildren, the only language that would accomplish that purpose would be language that expressly excluded the grandchildren from participation in the gift. I have never seen any other case that goes that far; and if the case of *Deveaux v. Barnwell, supra,* correctly expresses the law, one

wonders what the necessity was for the many statutes which have been enacted against the lapsing of legacies and devises in favor of deceased children.

The other cases cited in the present connection, *viz.*, *Ingraham v. Meade, supra,* was where trustees were directed after the termination of a life interest in favor of M., wife of the trustor, to pay and distribute the principal among "such of Mrs. M.'s children as the said Mrs. M., by her last will and testament should appoint, and for want of such appointment, then in trust for the use of such of the said children as shall be living at the death of the said M., *and the issue of such of the said children as may then be dead.*" Mrs. M. appointed part of the principal to her grandchildren by two deceased daughters, and the court held that such grandchildren were within the description of children as the word was intended by the trustor to be understood. Its view was based on the presence in the trust agreement of the italicized clause, from which the inference was drawn that the issue of a child was equally within the contemplation of the trustor as a child itself. Therefore, the court concluded, "children" as used in the instrument included grandchildren. It is to be observed that the Supreme Court of Pennsylvania in *Horwitz v. Norris,* 49 *Pa.* 213, 218, in speaking of the classes of cases where "children" is interpreted as being used co-extensively with "issue" in exception to the general rule, said that the type of case found in *Ingraham v. Meade, supra,* is "perhaps" another exception. When it is considered that a gift in default of appointment is alternative in its operation, the reason is not clear why the language designating possible appointees in case of a power's exercise should be colored in meaning by language which designates the beneficiaries in case the donee chooses not to select among the described appointees. In such a case there is one class eligible for appointment, and there is another class whom the testator designates in case the donee did not choose to select from the first.

But let the case of *Ingraham v. Meade, supra,* be viewed as it may. The present case is distinguishable from it. For here the alternative in default of appointment is not that the estate shall go to children and the issue of deceased children, if any, as in *Ingraham v. Meade.* It is that the estate shall be "divided in accordance with the intestate laws of the State of Delaware." If the language stopped at that point, the argument that "children" is to be enlarged co-extensively with the designees in the alternative gift, would prove too much. For if there were neither children nor grandchildren, the word "children" would by borrowed color broaden out far enough to take in the donor's collaterals, which would be following the lead of argument to a clearly indefensible result. But, it may be said the language does not stop at that point. It proceeds—"the issue of any deceased child to take, in equal shares if more than one, the share of such parent so deceased." Even so, nothing is to be understood by that except that which under the intestate laws is always true, namely, that descent and distribution are *per stirpes.*

So that, from the foregoing, I conclude that the provision in default of appointment was that the estate should go to the donor's heirs as in intestacy. The case is therefore quite distinguishable from *Ingraham v. Meade, supra,* which is the principal authority relied on by the grandchildren to support their claim.

Their solicitor also cites *In re Schwartz's Estate,* 168 *Pa.* 204, 31 *A.* 1085, in support of their contention that the word children includes grandchildren. An examination of that case shows it to be not in point, because the devise was held by the court to vest a remainder in the children after a life estate with a power in the life tenant to make partition only.

The conclusion from what has been said is that the grandchildren are not qualified to receive the one-fifth share of the proceeds of sale. They are not in the limited class

of children. This makes it unnecessary to consider the further question of whether illegitimate children (grandchildren) are entitled to be treated equally with the legitimate ones. None can qualify. The one-fifth share was not appointed and accordingly is to be disposed of as part of the intestate estate of the donor. The other four-fifths go to the appointed children. *Cruse, Adm'r, v. McKee, et al., supra.*

Decree in accordance with the foregoing.