## THE BANK OF BRUMLEY v. JAMES WINDES, Appellant.

### Division One, April 12, 1926.

1. **CONVEYANCE: To Daughter and Heirs of Her Body: Estate Tail.** A deed by parents to their daughter Martha and the heirs of her body cannot be limited to a vested estate in Martha for life and to her children then and thereafter born in fee, but created a contingent remainder, and the fee did not vest in the lifetime of Martha, but vested in her bodily heirs living at the time of her death; and in the absence of equitable conditions creating estoppel, a conveyance by her to one of her children, who has died leaving her surviving, did not convey the contingent remainder of her other surviving children.

2. ————: ————: **Filling Blank in Printed Form: Omission of Assigns: Indiscriminate Use of Party and Parties.** The inconsistent and undiscriminating use of singular and plural nouns and pronouns in designating and referring to the party of the second part, in filling up the blanks in the printed form of a deed, is indicative merely of the carelessness and unskillfulness of the scrivener, but has no other significance. Where the deed from parents to a daughter was written on a printed form, and named the daughter "and the heirs of her body as parties of the second part," the fact that the deed named as the consideration love and affection and one dollar paid by "the said party of the second part" and granted the land to "the said parties of the second part, her heirs," striking out the printed words "and assigns," and in the *habendum* said that the rights and privileges were to be held "unto the said party of the second part and unto her heirs," again striking out the words "and assigns," and in the covenants the grantors said they would warrant

and defend the title "unto the said party of the second part, and unto her heirs and assigns forever," did not alter the fact that in the minds of the grantors the conveyance was, to the daughter and the heirs of her body, or convert the instrument from one creating a contingent remainder in the daughter's bodily heirs into one creating a vested estate in either the daughter or her children then and thereafter born.

3. ———: ———: Estoppel: Surrender of Interest by Contingent Remaindermen. Where land was conveyed to a daughter and the heirs of her body, and two of her children, during her lifetime, directly or indirectly, acquired the share of a brother in their father's separate lands, through an agreement or understanding that their expectant interests in the tract conveyed to the mother and her bodily heirs would go to such brother, and that their mother's deed would convey their interests to such brother, and such agreement or understanding was consummated, the said two children are barred, on equitable principles, upon the death of said brother, leaving children, from making claim to their interests in such tract as contingent remaindermen, as against a grantee of their mother and said deceased brother.

Corpus Juris-Cyc. References: Deeds, 18 C. J., Section 282, p. 303, n. 18, 19.   Estoppel, 21 C. J., Section 212, p. 1210, n. 81.

Appeal from Camden Circuit Court.—*Hon. C. H. Skinker*, Judge.

REVERSED AND REMANDED.

*Charles O. Calkin* and *Phil M. Donnelly* for appellant.

(1)   The deed should be carefully examined to get the intention of the grantor and in making this examination the entire instrument should be considered and not just portions of it. Taking the entire deed from its four corners, it was the intention of the grantor to convey a life estate to his daughter, and the remainder to the heirs of her body. It was not his intention to give her a fee simple estate, so that she could sell or dispose of it. Kane v. Roath, 276 S. W. 39; Chiles v. Bar-

tleson, 21 Mo. 346; McCullock v. Holmes, 111 Mo. 445; Reed v. Lane, 122 Mo. 314; Hunter v. Patterson, 142 Mo. 310; Linville v. Greer, 165 Mo. 397; Utter v. Sidman, 170 Mo. 294; Williamson v. Brown, 195 Mo. 337; Groom v. Morrison, 249 Mo. 554; Sims v. Brown, 252 Mo. 440; Garrett v. Wiltse, 252 Mo. 699; Eckle v. Ryland, 256 Mo. 440; 18 C. J. 252, 256, 257, 258. (2) The written and printed parts of a deed are equally binding but if they are inconsistent the former will control the latter. 18 C. J. 258; De Paige v. Douglas, 234 Mo. 88. (3) A conveyance or devise to a person and the heirs of his body creates an estate tail. Miller v. Ensminger, 182 Mo. 204; Chiles v. Bartleson, 21 Mo. 344; Farrar v. Christy, 24 Mo. 468; Phillips v. La Targe, 89 Mo. 72; Wood v. Kice, 103 Mo. 329; Reed v. Lane, 122 Mo. 311; Clarkson v. Clarkson, 125 Mo. 381; Hunter v. Patterson, 142 Mo. 310; Hall v. French, 165 Mo. 430.

*Barney Reed* and *Roy D. Williams* for respondent.

(1) The deed created a fee-simple title. (a) When prefatory words conflict with the granting clause, the granting clause must prevail. 18 C. J. 331; Dickson v. Van Huse, 157 Ala. 459, 19 L. R. A. (N. S.) 719; Mount Olive Stave Co. v. Hanford, 112 Ark. 255; Richards v. Richards, 60 Ind. App. 34; Callaway v. Forest Park Highlands Co., 133 Md. 1; Johnson v. Borden, 86 Vt. 19. (2) The deed, upon its face, creates a fee-simple estate in Martha J. Windes. Garrett v. Wiltse, 252 Mo. 699; Adams v. Carey, 226 S. W. 833; Tennyson v. Walker, 190 S. W. 9; Rines v. Mansfield, 96 Mo. 394. (3) When the deed admits of two interpretations or is ambiguous, the deed operates more strongly against the grantor. Brawley v. Copelin, 153 S. W. 101; Bernero v. Real Estate Co., 134 Mo. App. 290. (4) The construction placed upon the deed by the parties is, at least, persuasive. Blumenthal v. Blumenthal, 251 Mo. 693; Warne v. Sarge, 258 Mo. 162. (5) In any event, the voluntary partition participated in by

the respondent in this case, is binding, and will bar him from setting up title to the land deeded to Harry Windes, who was plaintiff's grantor.

RAGLAND, P. J.—This is a statutory action to determine title. The land involved, 160.23 acres, is situated in Camden County. One William A. Bradshaw is the admitted source of title. On September 29, 1892, Bradshaw and his wife executed and delivered to their daughter, Martha J. Windes, a deed of which the following is a copy:

"THIS INDENTURE, Made on the 29th day of September A. D. One Thousand Eight Hundred and Ninety-two, by and between William A. Bradshaw and Jane Bradshaw, his wife, of Miller County, Missouri, parties of the First Part, and *Martha J. Windes, our daughter and the heirs to her body,* of the County of Miller, in the State of ————, *parties of the Second Part.*

"WITNESSETH: That the said parties of the First Part, in consideration of the sum of love and affection and One Dollar, to them paid by the said *party of the Second Part,* the receipt of which is hereby acknowledged, do by these presents, Grant, Bargain and Sell, Convey and Confirm, unto the said *parties of the Second Part, her heirs,* and assigns, the following described Lots, Tracts or Parcels of Land, lying being and situate in the County of Camden, and State of Missouri, to-wit: [Here follows a description of the land similar to that found in the petition filed herein.]

"To Have and To Hold the premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in any wise appertaining unto the said *party of the Second Part and unto her heirs* and assigns, FOREVER, the said William A. Bradshaw hereby covenanting that he is lawfully seized of an indefeasible Estate in Fee in the premises herein conveyed; that he has good right to convey the same; that the said premises are free and clear of any in-

cumbrance done or suffered by them or those under whom they claim, and that they will warrant and defend the title to the said premises unto the said *party of the Second Part,* and *unto her heirs and assigns* forever, against the lawful claims and demands of all persons whomsoever.

"IN WITNESS WHEREOF," etc.  (Italics ours).

At the time of the execution of the deed Martha J. Windes was married, but whether she had any children at that time the evidence does not with any certainty disclose.

On the —— day of July, 1916, the husband of said Martha J. Windes was dead and had left surviving him his widow and four sons, Elza, John, Harry and Fred, his heirs at law.  These four sons had inherited from him 270 acres of land which they still held as tenants in common, but subject to the interest of their mother, presumably that of unassigned dower.  There was evidence tending to show that on the date just mentioned an arrangement was entered into whereby Harry Windes was to convey to his co-tenants all of his interest in the 270 acres of land in consideration of their relinquishing to him all of their interest in the 160 acres held by the mother under the Bradshaw deed.  One obstacle to the carrying out of the arrangement presented itself and that was the minority of Fred Windes.  However, the notary whom they called in consultation for the purpose of having the proper conveyances prepared told them that it would not be necessary to have a deed from Fred; that the mother, Martha, had the title in fee to the 160 acres and that she could convey direct to Harry. Thereupon Harry deeded his interest in the 270 acres to his brothers, and his mother executed a general warranty deed whereby she purported to convey the 160 acres to him, reserving to herself a life estate therein.

On July 24, 1919, Harry Windes, Lula his wife, and the said Martha J. Windes, executed and delivered to the plaintiff a deed of trust on the 160 acres in question

to secure the payment of a note for $2,500. This deed of trust was subsequently foreclosed; the plaintiff was the purchaser at the foreclosure sale and received a trustee's deed conveying to it all the right, title and interest of both Harry Windes and his mother, Martha.

On October 3, 1921, Elza Windes conveyed to John, the defendant herein, his interest, whatever it might be, in and to the land in controversy.

At the time of the institution of this suit, and at the time of the trial, in 1922, Martha J. Windes and two of her children, Elza and John, were living; Harry and Fred were dead; Harry had left surviving him four children, all of whom were living.

The petition is conventional. In his answer defendant claims the interests of himself and Elza Windes as contingent remaindermen. The reply avers that by reason of the agreement and understanding through which Harry Windes conveyed to his brothers his interest in his father's estate for their interests in their mother's land the defendant is now estopped to make any claim to the land in controversy.

The circuit court found and adjudged that William A. Bradshaw and his wife by their deed conveyed to Martha J. Windes the fee simple title in and to the land therein described and that plaintiff by mesne conveyances has acquired and is now the owner of that title. From such decree defendant appealed.

I. The principal question presented for determination is: What estate was conveyed by the Bradshaw deed? There is no contention by either side that the grantors intended to convey to their daughter Martha and her children then living, if any, as tenants in common (Tygard v. Hartwell, 204 Mo. 200, 206), or to convey to their daughter an estate for life with remainder to her children, including those that might thereafter be born. [Kinney v. Matthews, 69 Mo. 520, 524.] Laying aside therefore the possible constructions which would discover such an intent, the question resolves itself into whether the estate granted was limited to the

grantee and the heirs of her body; otherwise, it was in fee simple. It is insisted by respondent that as the operating clauses of the deed do not make use of the words *de corpore suo* or equivalent words designating or pointing out the body from whom the heirs inheritable are to issue or descend an estate in fee simple was created. It is true that in the granting, habendum and warranty clauses the word "heirs" is not followed by words of limitation, but the first time it occurs in the instrument it is restrained by the words, "to her body." In the very beginning the parties to whom the grant is to be made are designated: "Martha J. Windes, our daughter and the *heirs to her body.*" An there is nothing in the context to indicate that the grantor in his subsequent use of the word "heirs" intended it to have any broader significance. It must be presumed therefore that wherever he used the words "her heirs" he meant the heirs of her body. *Generi per speciem derogatur.*

In the preceding paragraph we have applied to the deed an ancient rule of construction, but the same result will, we think, be reached if the modern method of searching the instrument from the four corners for the grantor's intent be employed. On a casual inspection it is manifest: First, that the deed was prepared by filling in the blanks of a printed form and that it was written by an unlearned scrivener; second, that the grantor's dominant thought was to make a gift of the land in such form that his daughter could not sell or dispose of it and that this could be accomplished by deeding it to her and her bodily heirs. With this thought duly impressed upon his mind the scrivener gave it expression in the very first blank space that could with any degree of appropriateness be made available for the purpose. That space called for the party or parties of the second part, the person or persons who were to take under the deed, and there he wrote: "Martha J. Windes . . . and the heirs to her body;" then as he proceeded in filling out the blanks he struck out the word "assigns" wherever it occurred, overlooking only

the last one. The inconsistent and undiscriminating use of singular and plural nouns and pronouns in designating or referring to the party of the second part is indicative merely of the carelessness or unskillfulness of the scrivener. It should be accorded no other significance. [Garrett v. Wiltse, 252 Mo. 699, 701.]

For the reasons herein appearing we are of the opinion that the Bradshaw deed passed an estate in fee-tail. Martha J. Windes therefore took an estate for life and her children contingent remainders in fee. This because of the statute. [Section 2267, R. S. 1919.] As Harry Windes predeceased his mother the plaintiff now has nothing more than the life estate of Martha.

II. If Elza and John Windes acquired directly or indirectly the share of Harry in their father's estate through an agreement or understanding that their expectant interests in their mother's land should go to Harry and that their mother's deed would convey such interest, there can be no doubt but that on equitable principles they are barred from making claim to those interests now. [Lawson v. Cunningham, 275 Mo. 128, 150; Hector v. Mann, 225 Mo. 228.] However, the trial court made no finding as to that issue and the evidence is too uncertain and hazy to warrant us in attempting to do so. The judgment is reversed and the cause remanded. All concur.