## FARRAR v. BINGHAM et al.

### No. 6917.

United States Court of Appeals for the
District of Columbia.
Argued June 11, 1937.
Decided Sept. 30, 1937.

William B. Wright, of Washington, D. C., for appellant.

George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., Henry R. Gower, Richard H. Wilmer, and Douglas L. Hatch, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

This is an equity suit to establish a trust and require an accounting. The ultimate issue concerns the construction of a will. In 1887, Thomas S. Rutherfurd died domiciled in Missouri. He left a will, which was duly probated, in which he made provision for his wife and children. His wife, however, died before he did so that the provisions of the will relating to her need not be considered. At his death he had six children of whom one was Adele, the wife of James S. Farrar. She was the second wife of Farrar, who by a former wife had a son named James Christy Farrar. By Adele he had another son named Royal Bernard Farrar. James Christy Farrar and Royal Bernard Farrar were therefore, half-brothers through their father. The suit was originally commenced by James Christy Farrar, but he died during its pendency, and it has been continued by his sole heir and executrix. The appellee Rutherfurd Bingham is sued as the administrator of the estate of Theodore A. Bingham, deceased (who was trustee under the will of Thomas S. Rutherfurd), and appellee Union Trust Company is sued as executor of the estate of Adele Farrar, who died a resident of the District of Columbia. The bill presents the following case:

Thomas S. Rutherfurd left his personal estate to his children absolutely and in equal shares. All his real estate, so far as we are here concerned, was situated in Missouri, and this he devised as follows:

"And to the following of my children, viz: Isabelle, Wife of Dr. B. A. Clements, Thomas S. Rutherfurd, Adele, wife of Jas. S. Farrar, Maud, wife of W. T. Hartz, Lucile, wife of T. A. Bingham and John Rutherfurd I will and devise all my real estate then remaining in equal proportions during their respective lives with remainder over to their issue respectively, with the right and power however in each of my said children in the event that at or previous to their death they should have no child or children then living then such child of mine may by will devise and dispose of his or her share in my real estate so bequeathed to him or her in such manner and to such person or persons or for such uses and purposes as he or she may elect and chose."

It is this provision of the will which has provoked the present controversy. At the time of Thomas Rutherfurd's death, his daughter Adele Farrar had one son living, Royal Bernard Farrar, mentioned above. This son died in 1903, intestate, unmarried, and without issue. His heirs at law were his mother, Adele, and his half-brother, James Christy Farrar, and it is necessary to decide here what estate, if any, Royal Bernard Farrar had at his death in the property of Thomas Rutherfurd, Adele Farrar survived her son Royal by some thirty years, dying in 1935. By her last will and testament she undertook to dispose of the estate received by her under the will of her father, Thomas S. Rutherfurd. Her claim of right to dispose of this property is based upon the power of appointment contained in the above-quoted clause of her father's will. James Christy Farrar claims that under Missouri law he succeeded to a one-third share of the estate of his half-brother, Royal, and that this estate at the time of Royal's death included a vested remainder in the property in which Adele was by her father's will given a life estate.

Both appellant and appellees "concede" that the language of Rutherfurd's will, devising his real estate to his named children for life with remainder over to their issue, created an estate tail. If this were true, there would seem to be nothing to the case because the statutes of Missouri, as interpreted by the courts of that state, provide that estates tail are abolished and that what would otherwise be an estate tail shall be taken to be a life estate in the first taker with a contingent remainder over to

the person to whom the estate tail would pass upon the death of the first taker.[1] And, obviously, if Royal took only a contingent remainder, James Christy inherited nothing, for a contingent remainder is not descendible. But the difficulty is that we are not able, as counsel are, to concede that the language of the will created an estate tail. Undoubtedly there are cases at common law and cases in several of the states holding that a grant or devise to A for life, remainder to his issue, creates an estate tail (2 Jarman on Wills (6th Ed.) § 1263; Thompson on the Construction of Wills, § 389; 1 Tiffany on Real Property (2d Ed.) § 26, p. 63), but we are here dealing with a Missouri will and with Missouri real property, and we must look to the law of that state to determine what estate in land the words here created. There are at least two cases which throw considerable doubt upon the correctness of the position counsel take. The first is Kinney v. Mathews, 69 Mo. 520; the other Tindall v. Tindall, 167 Mo. 218, 66 S.W. 1092. But compare Reed v. Lane, 122 Mo. 311, 26 S. W. 957. Since, however, we think the case may be decided on another and different ground, we express no opinion on the question.

The conclusion we have reached is, that even if Royal Bernard Farrar had a vested estate under the terms of his grandfather's will, it was subject to be divested upon his death prior to the death of his mother, the life tenant, and upon her testamentary exercise of the power of disposal given by the will.

The language of the provision of the will is: " * * * With the right and power however in each of my said children in the event that at or previous to their death they should have no child or children then living then such child of mine may by will devise and dispose of his or her share in my real estate so bequeathed to him or her in such manner and to such person or persons or for such uses and purposes as he or she may elect and chose."

It is impossible to read the entire will and reach any different conclusion than that the testator desired and intended to leave his estate exclusively to his children and grandchildren, and in such circumstances it is of course the duty of the court, if possible, to give effect to this intent; and it is the law in Missouri, as well as elsewhere, that in order to reach this end words may be supplied and omitted and sentences transposed. Grace v. Perry, 197 Mo. 550, 559, 95 S.W. 875, 877, 7 Ann.Cas. 948. By the clause in question, the testator divided his real estate into six portions, and gave to each of his six children a life interest in one of the portions with remainder over to his or her surviving "issue," and added that if no children (the testator's grandchildren) survived them each of his children should have the power to appoint his or her portion of the estate. James Christy Farrar was not related to the original testator. If he took anything by inheritance from Royal Bernard Farrar, it must be because the appointment clause cannot be so construed and enforced as to effectuate the testator's intent and pur-

---

[1] Rev.St.Mo.1929, §§ 3108, 3110, Mo. St.Ann. §§ 3108, 3110, pp. 1934, 1938:

"*Entails not allowed—the remainder is fee simple—to whom it shall pass*

In cases where, by the common or statute law of England, any person might become seized in fee tail of any lands, by virtue of any devise, gift, grant or other conveyance, or by any other means whatever, such person, instead of being seized thereof in fee tail, shall be deemed and adjudged to be, and shall become, seized thereof for his natural life only; and the remainder shall pass in fee simple absolute to the person to whom the estate tail would, on the death of the first grantee, devisee or donee in tail, first pass according to the course of the common law, by virtue of such devise, gift, grant or conveyance. (R.S.1919, § 2267.)"

"*Remainder limited to the heirs, etc., of a person having a life estate—how disposed of*

Where a remainder shall be limited to the heirs, or heirs of the body, of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heirs or heirs of the body of such tenant for life shall be entitled to take as purchasers in fee simple, by virtue of the remainder so limited in them. (R.S.1919, § 2269.)"

Under section 3108: Bank of Brumley v. Windes, 314 Mo. 206, 282 S.W. 696; Nichols v. Robinson, 277 Mo. 483, 211 S.W. 11; Williams v. Reid (Mo.Sup.) 37 S.W.(2d) 537; Callison v. Wabash Ry. Co., 219 Mo.App. 271, 275 S.W. 965.

Under section 3110: Emmerson v. Hughes, 110 Mo. 627, 19 S.W. 979; Reed v. Lane, 122 Mo. 311, 26 S.W. 957; Elsea v. Smith, 273 Mo. 396, 202 S.W. 1071; Hartnett v. Langan, 282 Mo. 471, 222 S.W. 403.

pose. Appellant insists the will gave Adele no power of disposal which she could exercise, on the grounds, first, that the power is void because of its ambiguity and uncertainty; second, that the power of disposal is repugnant to the vested estate created in Royal Farrar and is therefore void.

First. In our view neither point is well taken. The power, if we may be pardoned the repetition, is in these words: " * * * With the right and power however in each of my said children in the event that at or previous to their death they should have no child or children then living then such child of mine may by will devise and dispose of his or her share in my real estate, * * * " etc.

If the testator had merely said, in the event that at Adele's death she should have no child then living, there would of course be no difficulty because obviously in that case the time would have related to the date of the death of Adele, the life tenant. It is, therefore, the use of the words, at or previous to their death, which creates whatever ambiguity may exist. "Previous" to her death Adele did have a child then living, but this was more than thirty years before her death. "At" her death she had no child then living. It is by reason of this condition that appellant argues either that it is impossible to tell what the testator meant or that the testator meant that if at any time during the life of Adele she had a child living the power of appointment should be inoperative. But this construction would be wholly contrary to the intent of the testator as appears from the language used. A person cannot "at" his death devise property by will for, although the will speaks as of the death of the testator, it is of necessity made previous to death; and in this view a fair interpretation of the language used by the testator seems to us to be that if Adele's child or children had all died prior to the time when previous to her death she made her will, the power was to be operative. The adverb "then," which is used twice with reference to the time when Adele might exercise her power of appointment, seems to indicate clearly that the testator looked forward to the death of Adele and realized that upon that event her children might have predeceased her. The testator realized what was obvious; that by the time Adele came to make her will she would know whether she was then childless or not. His dominant thought was that the property

should go down to his children and grandchildren; and if no grandchildren survived their parents, the testator was satisfied to have his children dispose of the property. The argument, therefore, of appellant either to create ambiguity or to prove that the words, previous to their death, were intended by the testator to cover the whole lifetime of each of the life tenants, seems to us to be unfounded in the light of the obvious purpose of the language used. The words "then living," as used by the testator, clearly presuppose previous birth and death, and we think it obvious that Adele could not have a child previous to her death then living since "previous to" means before her death, and the word "then" refers to the time of death. To construe the language thus would be no more than to say, if before her death she has no child living at her death, which, of course, is meaningless. Viewed, therefore, in the light of what the testator intended to do, the phrase, at or previous to their death, has, we think, reference to the time of the making of the will by the life tenant in the exercise of the power of appointment.

Second. We think it is not correct to say that the power of appointment contained in the will is repugnant to the estate in remainder created. Appellant says that Thomas Rutherfurd devised his real estate to his children with remainder over to their issue, thus creating a fee tail estate which the statute, in the view of her counsel, converted into a vested estate in fee and that the claimed power of disposition is repugnant to this fee and hence is void. The Supreme Court of Missouri seems to us to have decided the contrary of this. In Von Behrn v. Stoeppelmann, 286 Mo. 73, 226 S. W. 875, 878, the testator left certain real property to his wife and at her death to his children by name, "to be divided as my wife may direct by will or otherwise." The wife made certain gifts of part of the property during her lifetime and disposed of the rest by will. In a suit for the partition of some of the realty, the court said:

"We agree the children took vested remainders, as said by the attorney for plaintiffs, but decline to agree that the widow could not divest the remainders by exercising the power to appoint conferred on her by her husband's will. * * *

"We have found neither in judgment nor treatise, unless it be in a Pennsylvania case to be noticed later, any authority for the proposition that remainders followed by

the donation of such a power are not subject to be defeated by the exercise of the power, but, in case of the death of the remainderman in the life-time of the tenant for life, must go to the heirs of the deceased remainderman. The great weight of decision and of comment is to the contrary. In cases where, as here, there is a limitation over of remainders to a class, after a life interest, or words to show an intention that the class should take thereafter, but subject to a power of appointment among the class in the life tenant or someone else, then, in default of an appointment, or in the event of a bad one, the heirs of a remainderman, deceased when the life interest ends, will be given his share by the courts. [citing authorities]. But all those authorities recognize the rule that a good appointment under the power will so far defeat the interest of a remainderman that if he dies before the end of the life interest his heirs cannot come in for a share, as they would have done had there been no appointment. The contrary rule would render the power to appoint nugatory, and frustrate the purpose of the donor; for the power is conferred in order that the beneficiaries shall take according to the judgment of the donee of the power and not as they would were no power given."

Appellant relies on cases such as Elsea v. Smith, 273 Mo. 396, 202 S.W. 1071, 1075, to support her argument that a remainder once vested cannot be divested. That was a suit to quiet title. The facts were these: In 1883, Paschal Smith conveyed the land in dispute to his daughter in the following language: "Unto the said Lou E. Elsea and to the heirs of her body begotten...... Provided, further, if the said Lou E. Elsea shall die, leaving surviving heirs of her body begotten, and the said heir or heirs shall die without issue then the said lands shall revert to and become the property of the said Paschal E. Smith and in case he be then deceased, the same shall descend to his heirs."

Lou thereafter had a son, Earl Elsea, who was her only issue. Paschal, the grantor; and Lou, the life tenant (under the converted estate tail), died, leaving Earl surviving. Thereupon, by virtue of the deed and by force of the statutes of Missouri, Earl became seized of the land in fee simple. But Earl then died without issue, and the claim was made that the estate reverted to the grantor under the deed. This claim the court denied. It pointed out that R.S.1919, § 2269 (Mo.St. Ann. § 3110, p. 1938) (which we quoted earlier in a footnote), provided for the immediate vesting in fee of a remainder at the end of the life estate, and said: "That the fee created by law in the second taker cannot be cut down by a defeasance or executory interest, but upon the death of the first taker becomes absolute."

And further: "Any limitation by construction upon the estate thus created would destroy the purpose of the statute. An estate in fee having been created, a remainder cannot be limited thereon, because the latter must have a particular estate to support it. Any other limitation, whether it be in the nature of an executory interest or other defeasance, being inconsistent with the complete sovereignty of the owner of the fee over the land and his consequent unlimited right of alienation, cannot be attached to the estate, and, if attempted to be created, is void."

But appellant can derive no benefit from this language because the case at hand is obviously different from the Elsea Case. Here, at the most, Royal Bernard Farrar took only a vested remainder in interest with nothing in possession, while in the Elsea Case Earl Elsea took not only a vested remainder in interest and possession, but a fully ripened fee-simple estate. It is beyond dispute that a fee-simple estate must either vest or not vest, and that once vested it is indefeasible. But the case is entirely different with remainders; and the Von Behrn Case, supra, is ample authority for the proposition that in Missouri, as elsewhere, a remainder though vested may be limited or conditioned to divest upon the happening of a named event. See Thompson on the Construction of Wills, §§ 498, 515.

We are therefore of opinion that the decree of the District Court, sustaining the right of Adele under the power of disposition contained in the will to dispose of the portion of her father's estate devised to her for life, is right, and should be, and is, affirmed.

Affirmed.